(December 30, 1905.)

# THE VILLAGE OF SAND POINT v. DOYLE.

[83 Pac. 598.]

COMPLAINT IN EQUITY—DEMURRER SHOULD BE OVERRULED WHEN.

1. Where the complaint alleges the corporate capacity of plaintiff, and that by some threatened act defendant will create a nuisance or threatens to or is about to commit some act that will endanger the health of the inhabitants of the village or city, or that will result in damage to the property of the city or village, or may be the means of causes of action for damage against the city or village, equity will grant relief.

2. Where a complaint states any cause of action that will put the defendant on his defense of the alleged wrongful act, it is not subject to demurrer.

(Syllabus by the court.)

APPEAL from the District Court of Kootenai County. Honorable R. T. Morgan, Judge.

Judgment for respondent on demurrer for his costs, from which the appeal was taken. Reversed.

The facts are stated in the opinion.

Herman H. Taylor and Charles L. Heitman, for Appellant.

The laws of Idaho place the burden of maintaining and keeping in safe repair all streets, highways and thoroughfares within their corporate limits upon cities, towns and villages. (Rev. Stats., sec. 2230, subd. 16; *City of Genessee v. Latah Co.*, 4 Idaho, 141, 36 Pac. 701; *Nelson v. Board of Commrs.*, 6 Colo. App. 279, 40 Pac. 474.) The power of absolute control of the highways within an incorporated town or village is vested in the municipality. Their use, or the dedication of their use, or any portion thereof, for private uses, cannot be granted by the town, or its authorities, any attempt so to do being *ultra vires* and void. (*State v. Berdetta*, 73 Ind. 185, 38 Am. Rep. 117, 123; *Davis v. Mayor*, 14 N. Y. 524, 67 Am. Dec. 186. See elaborate note to 38 Am. Rep. 127, 128.) It is the duty of the municipality to keep

in safe repair all bridges within its corporate limits. Any negligence in this regard by the municipality would render it liable for any damages that might be caused by said negligence. (*City of Topeka v. Hemstead,* 58 Kan. 328, 49 Pac. 87; *Mischke v. City of Seattle,* 26 Wash. 616, 67 Pac. 357.) There is no such thing as a rightful private permanent use of public highways. (*State v. Berdetta,* 73 Ind. 185, 38 Am. Rep. 123, and note.) The dedication of a highway extends to the whole width of it, whether it is all used or not. The street includes sidewalks. (2 Dillon on Municipal Corporations, sec 780, note and cases cited; *Giffen v. Lewiston,* 6 Idaho, 231, 55 Pac. 545.) It is claimed by respondent that appellant has an adequate remedy at law. The only legal remedy which appellant would have would consist of repeated actions for damages. (1 Pomeroy's Equity Jurisprudence, secs. 252, 257, 271, 273, and cases there cited.) The fact that the act may be punished criminally will not prevent the exercise of the restraining power of equity. (*Attorney General v. Hunter,* 1 Dev. Eq. (16 N. C.) 12.)

R. E. McFarland, for Respondent.

There is not a single fact alleged showing how or in what manner the bridge will be rendered "unsafe" or "insecure." Injunctions are not granted upon bare suspicions, opinions, assumptions or conclusions. (10 Ency. of Pl. & Pr. 925, 926; *Longshore Printing etc. Co. v. Howell,* 26 Or. 527, 46 Am. St. Rep. 640, 38 Pac. 547, 28 L. R. A. 464; *City of Janesville v. Carpenter,* 77 Wis. 288, 20 Am. St. Rep. 123, 46 N. W. 128, 8 L. R. A. 808; *Insurance Co. of North America v. Bonner,* 24 Colo. 220, 40 Pac. 366; *Lorenz v. Waldron,* 96 Cal. 243, 31 Pac. 56.) The respondent being an abutter is entitled to a way of ingress and egress through streets, and, if the bridge is a street, through the bridge, and has a right to connect with the bridge. (*Spencer v. Metropolitan St. Ry. Co.,* 120 Mo. 154, 23 S. W. 126, 22 L. R. A. 668; *Willamette Iron Works v. Oregon Ry. etc. Co.,* 26 Or. 224, 46 Am. St. Rep. 620, 37 Pac. 1016, 29 L. R. A. 88; *Bannon v. Rohmeiser,* 90 Ky. 48, 29 Am. St. Rep. 355, 13 S. W. 444; *Brak-*

*ken v. Minneapolis etc. Ry. Co.*, 29 Minn. 41, 11 N. W. 124;
*Haynes v. Thomas*, 7 Ind. 38; *Heller v. Atchison etc. Ry.
Co.*, 28 Kan. 635; 2 Smith on the Modern Law of Munic-
ipal Corporations, 1214; 1 Am. & Eng. Ency. of Law, 225.)
Recurring to the proposition that equity will not interfere to
restrain the commission of a criminal offense, I submit that
the ordinance pleaded in the complaint, if valid, makes it
a criminal offense to conduct a saloon within the restricted
district. (Horr & Bemis on Municipal Police Ordinances,
p. 186, sec. 206; 1 High on Injunctions, secs. 20-28; *City
of Janesville v. Carpenter*, 77 Wis. 288, 20 Am. St. Rep. 123,
46 N. W. 128, 8 L. R. A. 808; *State v. Schwickardt*, 109 Mo.
496, 19 S. W. 52, 53; *Neaf v. Palmer*, 103 Ky. 496, 45 S. W.
506; *Planet P. & F. Co. v. St. Louis etc. Ry. Co.*, 115 Mo. 613,
22 S. W. 616.)    Appellant goes so far as to conclude that if
the building is used "for saloon purposes, *or any other pur-
pose*," it "will inflict irreparable injury and damage upon
the public." How? Equity will not restrain possibilities.
(1 High on Injunctions, secs. 742-745; *Sherman v. Clark*, 4
Nev. 138, 97 Am. Dec. 519; *Lorenz v. Waldron*, 96 Cal. 243,
31 Pac. 56; *Goodwin v. New York etc. Ry. Co.*, 43 Conn. 499;
*Truly v. Wanzer*, 5 How. (U. S.) 141, 12 L. ed. 88.)    From
the complaint as a whole I infer that appellant claims ground
on either side of the bridge as a part of the highway because
the bridge has been used eight years.    It is a well-settled rule
of law that a highway established by user is only as wide
as actually used.    (13 Cyc. 488c; *Talmage v. Huntting*, 29
N. Y. 447; *Valley Pulp etc. Co. v. West*, 58 Wis. 599, 17 N. W.
554.)

STOCKSLAGER, C. J.—Plaintiff filed its complaint al-
leging that it is a corporation.    It is shown a stream known
as Sand creek runs through the village of Sand Point, and
that there is a bridge across said stream connecting the streets
at either end of the village.    This bridge, it is alleged, is
four hundred and fifty feet long, sixteen feet wide, inclusive,
and fourteen and one-half feet in width within the railing,
and from fifteen to twenty feet high.    It is built of wood
and is a principal highway connecting the east with the

west side of said creek. It was constructed by Kootenai county years ago and has along its entire length on both sides substantial wooden railings necessary for the safety of the traveling public, and that it is necessary that such railings should remain intact and in sound condition. That large numbers of women and children residing in said municipal corporation cross this bridge daily; that the street at each end of this bridge is fifty feet wide and has been dedicated to the public and accepted by the municipal corporation. That the chairman and board of trustees of said municipal corporation did, on or about March 2, 1903, enact an ordinance prohibiting the sale of intoxicating liquors within a distance of one hundred feet on the north and south sides of said bridge. This ordinance was published and took effect April 10, 1903, and has never been repealed. The ordinance prohibits the sale of ardent, distilled, fermented, or liquors of any character within the prescribed limits. It is next shown that respondent claims to be the owner of land situated within the ravine through which said stream flows within the corporate limits of appellant, which lot of land touches the right of way upon which said bridge is situated, on the north, one hundred and ten feet from the west end of said bridge, and that respondent has constructed a wooden frame building on said lot and is building a platform or bridge from said building over and upon the right of way crossed by said bridge with the intention of connecting said wooden building by said bridge or platform, with the floor of said bridge, and that he threatens to tear down and remove the railing upon said public bridge at a point where said platform is extended to connect with the floor of said public bridge, in order to use said public bridge as an outlet from said building. That defendant intends to use said building as a saloon for the purpose of retailing intoxicating liquors to the public therein in violation of the provisions of the municipal ordinance before mentioned. That defendant's said building is from seventeen to twenty feet from the railing of said public bridge on the north side; that if defendant is allowed to connect said building with

the floor of said public bridge and remove the railing therefrom, in order to give him an outlet upon said bridge, by reason of the removal of said railing, will become unsafe and insecure for the traveling public and for teams and vehicles. That if defendant is allowed to conduct a saloon in said building, that portion of the public bridge in front of his saloon will become a loitering place for drunken and idle men, and will be annoying as well as unsafe for the public, especially women and children, to cross the public bridge at said points. That said bridge was erected at considerable cost and is the principal highway across said creek for the public; that a wooden building will jeopardize the existence of said bridge by reason of probable danger from fire from respondent's wooden building. That plaintiff, prior to the commencement of the construction of said wooden building by defendant, notified defendant that he would not be allowed to construct or maintain a building for saloon purposes, or for any other purpose, along the line of said bridge; but that defendant disregarded said notice and persisted in constructing said building, and still persists in connecting said building with the public bridge with the intention of using his building for saloon purposes. That said building, used as a saloon with ingress and egress to and from said public bridge, will be a nuisance, especially to the women and children who are daily compelled to pass over said bridge. That on or about July 1, 1903, defendant opened said building and moved a stock of intoxicating liquors therein, and for several days thereafter openly violated said ordinance by retailing intoxicating liquors to the public; that on July 3, 1903, a complaint sworn to and filed was issued by a justice of the peace for said precinct and county charging defendant with violation of said ordinance. Thereupon a warrant of arrest was issued upon said complaint and defendant pleaded guilty to the charge and was sentenced to pay a fine of $100 or be imprisoned in the village jail for the term of fifty days; that thereafter said fine was paid by defendant. That appellant has no adequate remedy at law, and that to allow respondent to maintain a saloon in said

building will inflict irreparable injury upon the public, and that it will result in the establishment and maintenance of a nuisance, besides violating the local laws of said municipal corporation and jeopardize the safety of said bridge. This statement is taken from appellant's brief, and is conceded by counsel for respondent to be in the main correct.   We think it correctly states the issue presented by appellant's complaint. To this complaint a demurrer was interposed as follows: " (a) That said complaint does not state facts sufficient to constitute a cause of action in this: 1. That said complaint lacks equity.   2. That it appears from the facts stated therein, and shows on the face of the complaint that complainant has a complete, speedy and adequate remedy at law for all the acts complained of and for all the threatened or apprehended acts complained of.   3. That it appears from said complaint that any injuries which may result from any act alleged to be threatened by defendant or apprehended by plaintiff are mere possibilities and exist only in imagination.   4. That the injuries alleged to be threatened or apprehended are too remote to justify any relief by injunction.   5. That an injunction granted under the circumstances set forth in said complaint would deprive defendant of his property without due process of law, and without compensation.   6. That said injunction would deprive defendant of his legal right to the reasonable and proper use of a public highway.   (b) That the complaint herein is ambiguous, unintelligible and uncertain in this: 7. That the said complaint does not show how the cutting of the rail mentioned in said complaint would in any way weaken or impair the bridge therein mentioned, or how the building of defendant would endanger said bridge from fire in any way, or any more than any other lawfully constructed building of similar character in the vicinity of said bridge, or how it would increase the travel on said bridge any more than if constructed at either end thereof."

On the seventeenth day of April, 1905, the demurrer having theretofore been submitted to the court, a judgment was entered first finding "that the said amended complaint does not state facts sufficient to constitute a cause of action or a

cause of suit, and that the plaintiff has an adequate remedy at law,'' and judgment for respondent for his costs. It will only be necessary for us to ascertain whether a court of equity can grant appellant any of the relief prayed for in his complaint as shown by the record. If so, then the demurrer should not have been sustained. That municipalities of the character of appellant are given very large power in the control and management of their affairs is not and could not be disputed. That they have the right to regulate and control the sale of liquors—to say where and under what conditions liquors may be sold within their corporate limits; to prescribe certain districts wherein buildings dangerous to the welfare of the people shall not be erected; to prohibit the conducting of any business dangerous to the morals and good order of the people of the municipality. The complaint must be taken as true in all its allegations; the demurrer admits this fact, but by its averments says that there is not enough stated in the complaint to warrant a court of equity to grant any relief: 1. That a cause of action is not stated; and 2. That appellant has a plain, speedy and adequate remedy at law, and it is so found by the court. If we find that the village of Sand Point has full power and control over its streets, alleys and bridges, and the right to declare by ordinance how and where certain classes of business shall be conducted, then appellant has the right to declare by ordinance that a saloon business shall not be conducted within one hundred feet of either the north or south side of the bridge crossing Sand creek. Again, if the city is responsible in damages (and likely it is) for any accident that may occur on said bridge by reason of any defect in its construction or maintenance, then it becomes the duty of the village authorities to guard carefully the safety of the people who travel over and across this part of the highway. This being true, we think the village authorities have the power to permit or reject the application of anyone to construct any kind of a building connecting with this bridge. If it is by them considered dangerous to the traveling public, offensive to any class of people who may have occasion to pass over the bridge, or if it will in any manner weaken or reduce

the safety of the bridge, then they may prohibit its construction. It is urged by counsel for appellant that women and children pass and repass over and across this bridge; that if respondent is permitted to conduct a saloon in his building it will be offensive to women and children who have occasion to pass back and forth across the bridge; that drunken men will congregate in front of said building and consequently on or near the bridge, and thus create a nuisance. Counsel for respondent meets this argument by the statement in his brief that, "it is a notorious fact that in every city and village in the state, saloons open upon the sidewalks and pavements, and yet it is not anywhere claimed that the sidewalks or streets immediately in front of such saloons are loitering places for 'drunken and idle men.' " This statement does not quite meet the issues. It is shown that the streets at either end of this bridge and connecting therewith are fifty feet wide, whilst the bridge is only fourteen and one-half feet wide in the clear. Again, if women and children are passing along any of the streets of the village where a saloon is being conducted, if "idle and drunken men" are congregated in front thereof, they may pass to the opposite side of the street or pursue their way on another street. In other words, they are not compelled to pass within the narrow limits of fourteen and one-half feet. This alone may not be sufficient to warrant a court of equity to grant relief by injunction, but it is certainly apparent that there is much more reason for the village authorities to prohibit the sale of intoxicating liquors in a building with its only outlet connected with the bridge, than there is to allow saloons to be conducted on the streets that have back entrances through which intoxicated persons may pass without encountering persons to whom they would be obnoxious or the opposite side of the street or other streets on which people may travel and thus avoid close proximity with such persons. Counsel for respondent insists that Kootenai county and not the village of Sand Point has the care, supervision and control of the bridge in question under the provisions of section 81, page 208, of the Session Laws of 1899. This section provides: "The city council or board of trustees

shall have the care, supervision and control of all public highways, bridges, streets, alleys, public squares and commons within the city or village, and shall cause the same to be kept open and in repair and free from nuisance. . . . . All public bridges exceeding sixty feet in length over any stream crossing a state or county highway shall be constructed and kept in repair by the county.'' This act was approved February 10, 1899. On the fourteenth day of February, 1899, at page 270 of the same session law, we find the following provision: ''Each incorporated city, town or village in this state constitutes a separate road district under this title, and the city council of each city and the board of trustees of each town or village, as far as relates to their city, town or village, have the powers conferred, and must perform the duties imposed upon the board of county commissioners of their respective counties by this chapter. Each city council and board of trustees must appoint a road overseer who must within such city, town or village have the powers conferred and perform the duties imposed by this chapter.'' Subdivisions 27, 28 and 29 of section 73, Act of 1899, page 205, authorize and empower cities and villages to ''prevent and remove all encroachments into and upon all sidewalks, streets, avenues and alleys,'' and to ''open, widen or otherwise improve any street, avenue, lane or alley,'' and to ''create, open and improve new streets, etc.'' All of the above provisions were construed by this court in the case of *Carson v. City of Genessee*, 9 Idaho, 244, 108 Am. St. Rep. 127, 74 Pac. 862. After reviewing the authorities and the various legislative acts pertaining to the organization of cities, towns and villages, the powers, duties and responsibilities thereof, Mr. Justice Ailshie said: ''It will be seen from the foregoing that the power of cities and villages in this state over the streets is exclusive and unlimited, and the question arises: Are their express or implied duties to the public and the individual commensurate with the powers granted them? It is conceded that there is no express statute in this state making municipal corporations liable in damages for negligence. The only remaining question is, Can such liability be said to be implied?''

After collecting and discussing a great many authorities bearing on this question, the opinion concludes thus: "It had all the authority required to have kept its streets in repair, and thereby avoid the liability to which it now finds itself subjected." The above case was an action for damages resulting from an injury received on one of the streets of the village of Genessee by reason of a defective sidewalk.

In this case it is not disputed that the bridge connecting the two streets of said Sand Point is a part of the public thoroughfare and is within the corporate limits of said village, hence with the same construction given our laws governing cities and villages as is shown in *Carson v. City of Genessee,* we must conclude that the village of Sand Point has complete and exclusive control over the bridge crossing Sand creek, with the duty imposed upon it by law of keeping it in repair and at all times safe and convenient for the accommodation of the traveling public. Since we have reached this conclusion, the question arises as to who would be liable for any damage or injury resulting from an accident caused by the erection of the building of respondent in close proximity to said bridge and connecting therewith by a platform. In our view of the law, the village is responsible for the condition of this bridge and any and every thing connected therewith. In case an injury should occur to anyone resulting from an accident occasioned by the construction of the platform connecting with the bridge, if it could be shown that the accident occurred on the right of way or street of appellant, under our holding in *Carson v. City of Genessee,* the city could be made to respond in damages, and we have no disposition to change the construction given our laws governing the questions involved in that case and this.

We think the demurrer should have been overruled. The judgment is reversed and cause remanded to the lower court for such further proceedings as is consistent with this opinion. Costs awarded to appellant.

Ailshie, J., and Sullivan, J., concur.