(No. 6037. May 3, 1935.)

EUGENIO BICANDI and DOLORES BICANDI, Respondents, v. BOISE PAYETTE LUMBER COMPANY, a Corporation, Appellant.

[44 Pac. (2d) 1103.]

Ralph S. Nelson and Alfred A. Fraser, for Appellant.

Dean Driscoll and Carey Nixon, for Respondents.

MORGAN, J.—Appellant owns and operates a sawmill adjacent to Emmett, in Gem County. The mill property is situated along the Payette River and, as a part of it, appellant has constructed an artificial pond which is filled with water by means of a canal from the river. The pond, canal and river surround a tract of land referred to in the case as the island. This pond is, and during the times herein mentioned was, used by appellant for the purpose of storing saw logs, brought on the premises by it to be manufactured into lumber at the mill. April 5, 1931, Lucio B. Bicandi, aged 11 years, son of respondents, with two other boys went to the pond and Bicandi and one of his companions went upon the logs floating therein, fell into the water and were drowned. This action was prosecuted by the parents of the Bicandi boy for damages, on the theory that appellant's negligence caused the death of their son. A general demurrer to the complaint was overruled, defendant answered, and trial to a jury resulted in a verdict for plaintiffs. A motion for judgment notwithstanding the verdict was overruled and judgment on the verdict was entered. This appeal is from the judgment, and one of the specifications of error brings here for review the order overruling the demurrer.

It is alleged in the complaint that respondents were and are husband and wife and the parents of Lucio B. Bicandi, and that his death was the result of the negligent acts of appellant as therein set forth. The corporate existence of appellant is alleged, as is its ownership and operation of the sawmill and premises above mentioned; also that on April 5, 1931, and for sometime prior thereto, one Steele

had been employed by appellant as caretaker and watchman, agent and employee in charge of its mill premises and was, on the afternoon of that day, acting in the course and within the scope of his employment. Then follows a description of the mill property, and it is set out that it is bounded on the North side by the Payette River and fenced on the East, South and West sides by a high picket fence. The construction and maintenance of the mill pond is alleged, as is its use for the storage of logs by appellant, and it is pleaded that the pond and logs were visible to children traveling and playing thereabouts and constituted an alluring, enticing and attractive place for boys to play. It is also alleged that at a point on the East side of the mill property where the fence ends at the South bank of the river the lower portion of the pickets have been broken off, some distance above the ground, making a hole under the fence sufficiently large to admit boys to appellant's premises, and paths and trails leading to the hole in the fence are described. These conditions are alleged to have been well known to appellant, its agents, servants and employees and particularly to its watchman on and prior to April 5, 1931. It is further alleged that many small boys living in and about Emmett were enticed, attracted and allured by the mill pond and floating logs and by the trails and paths leading through the fence to go into and upon appellant's property and play on the island; that on April 5, 1931, the Bicandi boy and his two companions, one 7 and the other 8 years old, went through the hole in the fence and from thence in a westerly direction toward the island; that the watchman was standing about 150 feet from the point where the boys entered the premises and asked them where they were going, to which they answered they were going down to the island to play, and that he replied "All right"; that the boys went to the island and shortly thereafter Bicandi and one of his companions commenced to play and run upon the logs floating in the mill pond; that one or more of the logs rolled or twisted throwing the two boys into the water and the logs closed over them rendering it

impossible for them to get out, and they were drowned; that the other boy ran for help and located the watchman a short distance away at a point where he could, and did, or in the exercise of reasonable care, should have seen that the boys were playing and running on and about the logs. It is further alleged in the complaint:

"That the said injuries to the said minor, Lucio B. Bicandi, were directly and proximately due to and caused by the negligence of the defendant, Boise Payette Lumber Company, in the following particulars, to-wit:

"(1) In maintaining an attractive place for children of tender years to play on and about which the defendant knew or in the exercise of reasonable care should have known was dangerous for children of tender years to play on or about without guarding the same or the said dangers in any manner whatsoever.

"(2) In failing to prevent children of tender years and particularly the said minor Lucio B. Bicandi from playing on and about said premises and particularly said logs and millpond which it knew or in the exercise of reasonable care should have known was dangerous for children of tender years to play on òr about when it knew or in the exercise of reasonable care should have known that said children played therein and thereon.

"(3) In knowingly permitting said children of tender years and particularly said minor, Lucio Bicandi, to play upon the said premises and on said logs and millpond, which it knew, or in the exercise of reasonable care should have known, was dangerous for children of tender years to play in and upon.

"(4) In inviting said children of tender years and particularly the said minor, Lucio B. Bicandi, to play upon said premises and upon said logs and millpond which it knew or in the exercise of reasonable care should have known was dangerous for children of tender years to play in or upon.

"(5) In maintaining or permitting well-beaten footpaths upon its mill site leading to and from the hole in the

picket fence which it knew or in the exercise of reasonable care should have known was enticing and alluring to children of tender years.

"(6) In permitting the pickets in the north end of the east fence to become broken, worn and decayed so as to permit a space of sufficient size to permit easy access to said mill site.

"(7) In failing to repair and maintain said east fence and particularly the north portion thereof so that the same would not constitute an enticing, alluring and attractive point for children of tender years to enter into and upon said mill site.

"(8) In permitting children of tender years to come upon said mill site and proceed to the island adjoining the millpond and logs floating thereon when it knew or in the exercise of reasonable care should have known it was dangerous for children of tender years to play thereon.

"(9) To permit children of tender years and particularly Lucio B. Bicandi to run and play on the logs floating on the millpond when it knew or should have known that he was running and playing thereon and knew or should have known that it was dangerous and unsafe for children of tender years to do the same.

"(10) In failing to warn said children and particularly the said minor, Lucio B. Bicandi, of the dangers of playing on said island, logs or millpond when it knew or in the exercise of reasonable care should have known of the dangers incident thereto and when it knew or should have known that children of tender years played on the said millpond constructed by defendant and upon the logs floated on and stored in said millpond and that such playing was dangerous to children of tender years.

"(11) In extending permission to Lucio B. Bicandi on the 5th day of April, 1931, to play on and about said island and the millpond and logs floating thereon and adjacent to and adjoining said island when it knew or in the exercise of reasonable care should have known that it was dan-

gerous to children of tender years, and particularly Lucio B. Bicandi, to play thereon.''

The demurrer to the complaint was urged, apparently, on the theory that the cause of action was based on the alleged negligence of appellant in maintaining its mill pond in such a way as to constitute what is commonly referred to, for want of a more accurately descriptive term, as an attractive nuisance, which lured respondents' son to his death.

A number of cases have come before the courts growing out of injuries to children sustained while playing on and about railroad turntables. One of these is *York v. Pacific etc. Ry. Co.*, 8 Ida. 574, 69 Pac. 1042, wherein a judgment for damages for the death of a child caused by an accident while playing on a turntable was affirmed. This court has not extended the doctrine stated in the York case to accidents caused by instrumentalities other than turntables nor, so far as we know, has it heretofore been called upon to do so.

After all, attractive nuisance cases, like other actions for damages for accidental injuries, are based on negligence —on the failure of the owner of property which is dangerous to others to exercise such care for their protection as a reasonably prudent person would employ under like circumstances. One possessing property which is dangerous to children of tender years and immature judgment and which may, by reasonable care, be rendered less dangerous, or not dangerous at all, is bound to exercise that care. This doctrine cannot, in justice, be extended to require the owner of useful and necessary property, which is dangerous, to answer in damages to those who are injured by it if, by reasonable care, he could not have excluded them from contact with it, nor otherwise prevented their injury.

High explosives may be locked up beyond the reach of children, turntables and other dangerous machinery may be so secured that children cannot injure themselves thereby, but this is not true of ponds, lakes, streams, and many other properties which are the subjects of private ownership and which may cause the injury or death of children who

play about them. The doctrine of attractive nuisance should not be extended so as to hold liable the owner of such property when he has used it only as a reasonably prudent person would do under like circumstances for, by so using it, he is not guilty of actionable negligence. (*Barnhart v. Chicago, M. & St. P. Ry. Co.*, 89 Wash. 304, 154 Pac. 441, L. R. A. 1916D, 443; *Smith v. McGoldrick Lbr. Co.*, 124 Wash. 363, 214 Pac. 819; *Peters v. Bowman*, 115 Cal. 345, 47 Pac. 113, 598, 56 Am. St. 106.)

In the Barnhart case the Supreme Court of Washington quoted from *Sullivan v. Huidekoper*, 27 App. Cas. (D. C.) 154, 7 Ann. Cas. 196, 5 L. R. A., N. S., 263, as follows:

"Without citing other authorities, we are persuaded that the conclusions in the cases cited and the reasoning upon which they are based are correct, and that in a case such as the one at bar it would be unjust to hold the landowner liable for the death of, or injury to, a child 10 years of age. We do not consider that the appellee was negligent in not taking steps to prevent the trespassing upon her land by boys of such age as plaintiff's intestate. To hold landowners responsible under such circumstances would be to impose upon them an oppressive burden, and shift the care of children from their parents to strangers. Every man who has been brought up with the freedom allowed to American boys knows that you might as well try to dam the Nile with bulrushes as to keep boys away from ponds, pools, and other bodies of water."

Mill ponds are, and for many years have been, in common use in Idaho. Logs have been, and are, kept and floated therein, as is alleged to have been done by appellant, and it is not customary to enclose them. Appellant's failure to maintain a sufficient fence, or other barrier, to keep boys away from the pond does not render it liable. Furthermore, the attractive nuisance theory cannot be made to apply to the facts alleged in the complaint. It has application only to cases where children have been injured while on premises where they would be trespassers

except for an implied invitation by something thereon which has attracted them.

Because the early cases grew out of accidents to children while playing on and about turntables, cases based on the attractive nuisance theory are frequently referred to as "turntable cases" In *Fusselman v. Yellowstone Valley Land & Irr. Co.*, 53 Mont. 254, 163 Pac. 473, 474, Ann. Cas. 1918B, 420, the Supreme Court of Montana said:

"The doctrine of the turntable cases proceeds upon the assumption that the injured party, if an adult, would have been a trespasser, but because of his tender years and indiscretion is not subject to the rule of liability applicable to trespassers. Any one who goes upon the private property of another without lawful authority or without permission or invitation, express or implied, is a trespasser to whom the landowner owes no legal duty until his presence is discovered. He is only required to refrain from wanton or wilful acts which occasion injury. . . . . A person upon the private property of another by invitation, express or implied, is there rightfully, and to him the landowner owes the positive duty to exercise reasonable care for his safety."

In 45 C. J. 771, sec. 172, it is said:

"Where no trespass is involved, the attractive nuisance doctrine is not applicable, but the right of recovery for injury is based upon different principles."

■ ■ According to the allegations of the complaint the Bicandi boy and his companions were not trespassers. They were invited to remain on appellant's premises by its caretaker and watchman who acted, in so doing, within the scope of his authority. While they were there, with appellant's knowledge and consent and by its invitation, it owed them the positive duty to exercise reasonable care for their safety.

In 45 C. J. 823, sec. 235, it is said:

"While the owner, occupant, or person in charge of property is not an insurer of the safety of an invitee thereon, he owes to an invitee the duty of exercising reasonable or ordinary care for his safety, and is liable for injury resulting from breach of such duty, although no element of

lawlessness or wantonness enters into the act or omission complained of. The duty in this respect is an active, affirmative, or positive one, and is not limited to merely refraining from injurious acts, although there is also a duty to refrain from any act which may make the invitee's use of the premises dangerous or result in injury to him.''

Even had these children not been invitees, but mere licensees whose presence on the premises was known to the watchman, it was his duty, in view of the facts alleged, imputable to his employer, to protect them from the disaster which was imminent from playing about the pond and the logs floating thereon and to prevent them from doing so.

The Supreme Court of Tennessee, in *Townsley v. Yellow Cab Co.*, 145 Tenn. 91, 237 S. W. 58, said:

''A statement of an Ohio court in this connection is frequently quoted: ·

'' 'Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them, must calculate upon this, and take precaution accordingly.' *Ficker v. Cleveland etc. R. Co.*, 7 Ohio N. P. 600.''

See, also, *Angelier v. Red Star Yeast & Products Co.*, 215 Wis. 47, 254 N. W. 351; *Ramsay v. Tuthill Building Material Co.*, 295 Ill. 395, 129 N. E. 127, 26 A. L. R. 23; *Fort Wayne & Northern Indiana Traction Co. v. Stark*, 74 Ind. App. 669, 127 N. E. 460; *Poteet v. Blossom Oil & Cotton Co.*, 53 Tex. Civ. App. 187, 115 S. W. 289; *Atlantic Ice & Coal Co. v. Harris*, 45 Ga. App. 419, 165 S. E. 134.

An examination of the complaint shows a cause of action is stated by respondents against appellant based on the negligence of its watchman in permitting the Bicandi boy and his companions to go to the island, formed in part by the pond covered with saw logs, and in taking no action to protect them from danger while there.

 A general demurrer to a complaint should be overruled if the facts therein alleged are sufficient to constitute a cause of action entitling plaintiff to any relief against defendant. (*Carter v. Wann*, 6 Ida. 556, 57 Pac.

314; *Village of Sandpoint v. Doyle,* 11 Ida. 642, 83 Pac. 598, 4 L. R. A., N. S., 810; *Bonham Nat. Bank v. Grimes Pass P. M. Co.,* 18 Ida. 629, 111 Pac. 1078; *Steinour v. Oakley State Bank,* 32 Ida. 91, 177 Pac. 843; *Swinehart v. Turner,* 38 Ida. 602, 224 Pac. 74; *Peterson v. Hailey Nat. Bank,* 51 Ida. 427, 6 Pac. (2d) 145.) The demurrer was properly overruled.

The answer admitted appellant's corporate existence and its ownership and operation of the sawmill plant. It denied the other allegations of the complaint and alleged contributory negligence of Lucio B. Bicandi and respondents.

 The court instructed the jury on the theory that appellant's liability, if it was liable, was due to having so maintained its log pond that it was an attractive nuisance which lured and enticed respondents' son to his death. The submission of that theory to the jury was erroneous. The log pond was not an attractive nuisance and appellant is not liable for damages to respondents for maintaining it.

It cannot be truthfully said the case was tried solely on the theory of an attractive nuisance. As heretofore pointed out, the complaint states a cause of action based on the negligence of appellant's watchman in permitting the boys to go to a place of danger, on its premises, and in taking no precaution to prevent injury to them while there, which acts and negligence on its part resulted in the drowning of respondents' son. Respondents introduced evidence establishing the truth of these allegations and it was undisputed, and sustains the verdict and judgment.

No assignment of error has been made presenting for review the instructions given, and the court did not err in any particular specified by appellant. This court will not review acts of a district court which have not been assigned as error. (*Citizens Right of Way Co., Ltd., v. Ayers,* 32 Ida. 206, 179 Pac. 954; *Hurt v. Monumental Mercury Min. Co.,* 35 Ida. 295, 206 Pac. 184; *McDonald v. North River Ins. Co.,* 36 Ida. 638, 213 Pac. 349; *Morton R. Co. v. Big Bend I. & M. Co.,* 37 Ida. 311, 218 Pac. 433; *Thomas v. Union Savings etc. Co.,* 38 Ida. 247, 221 Pac. 132; *Hill v.*

*Porter,* 38 Ida. 574, 223 Pac. 538; *Bain v. Olsen,* 39 Ida. 170, 226 Pac. 668; *Stedifeld v. Eddy,* 45 Ida. 584, 264 Pac. 381; *Hammond v. McMurray Brothers,* 49 Ida. 207, 286 Pac. 603; *Zach v. Pond,* 50 Ida. 685, 299 Pac. 666; *First Security Bank v. Enking,* 54 Ida. 735, 35 Pac. (2d) 266.)

The judgment appealed from is affirmed. Costs are awarded to respondents.

Givens, C. J., and Sutton, D. J., concur.

Petition for rehearing denied.

HOLDEN, J., Concurring Specially.—This court, many years ago, in 1902, in the case of *York v. Pacific & Northern Ry. Co.,* 8 Ida. 574, 69 Pac. 1042, aligned itself with that group of courts giving approval to and which have applied the ''attractive nuisance'' doctrine. Nevertheless, the majority refuse to apply that doctrine to the case at bar because, it is said, ''High explosives may be locked up beyond the reach of children, turntables and other dangerous machinery may be so secured that children cannot injure themselves thereby, but this is not true of ponds, lakes, streams, and many other properties which are the subjects of private ownership and which may cause the injury or death of children who play about them.'' Thus, the majority opinion assumes that appellant's mill pond could not have been made reasonably secure against injury or death to children because there are, for example, lakes which cannot be made reasonably safe from injury to or death of children, and of course there are many such lakes in Idaho and elsewhere. But the artificial mill pond involved in this case is not such a lake, and cannot be made such by any stretch of the imagination. Appellant's mill pond is approximately 2,000 feet long, and about 800 feet across at the widest point, and could be completely and easily fenced. In the vernacular of the small boy, it is merely a ''frog-pond.''

It is held, however, by the majority, that respondents are entitled to recover because the ''Bicandi boy and his companions were not trespassers. They were invited to remain

on appellant's premises by its caretaker and watchman who acted, in so doing, within the scope of his authority. While they were there, with appellant's knowledge and consent and by its invitation, it owed them the positive duty to exercise reasonable care for their safety.''

Under the ''attractive nuisance'' doctrine, an *express invitation* from, for example, a watchman is not required, the invitation being implied from the attractive and alluring nature of the thing, whether it be a turntable or log pond. In other words, under the majority opinion, an express invitation is required as a condition precedent to imposing upon a landowner the ''duty to exercise reasonable care'' for the safety of children of tender years, while under the ''attractive nuisance'' doctrine, the alluring and enticing nature of the thing causing injury to or the death of children is held, in and of itself, to amount to an express invitation.

In the case at bar, then, one is compelled to determine whether to align himself with that group of courts which have adopted what has been designated as the ''humane'' (attractive nuisance) doctrine, or with that other group which have adopted what has been designated as the ''hard'' doctrine. The ''hard'' doctrine puts *property* above *humanity;* on the other hand, the ''humane'' doctrine puts *humanity* above *property*. To hold that one who artificially creates and maintains something dangerous on his land, which from its very nature is attractive to children, something which will attract children to it to play just as certainly as a fish is attracted to and mechanically follows a bait, is under no duty to exercise reasonable and ordinary care to protect children from its dangers because they are not given an express invitation, smacks of the barbarous it seems to me. I do not hesitate, personally, to adopt the rule which places *humanity* above *property,* and gives reasonable protection to children of tender years against dangers which they cannot perceive and appreciate, even though an express invitation may not have been given. (1 Thompson Neg., 2d ed., secs. 1024, 1031 and 1033; *Best v. District of*

*Columbia,* 291 U. S. 411, 420, 54 Sup. Ct. 487, 78 L. ed. 882; *Sioux City & P. R. Co. v. Stout,* 17 Wall. 657, 21 L. ed. 745; *Union Pac. Ry. Co. v. McDonald,* 152 U. S. 262, 14 Sup. Ct. 619, 38 L. ed. 434; *Pekin v. McMahon,* 154 Ill. 141, 39 N. E. 484, 45 Am. St. 114, 27 L. R. A. 206; *Howard v. City of Rockford,* 270 Ill. App. 155; *Cochran v. Kankakee S. & L. Co.,* 179 Ill. App. 437; *Linnberg v. City of Rock Island,* 136 Ill. App. 495; 45 C. J. 758; *Peters v. City of Tampa,* 115 Fla. 666, 155 So. 854; *Ramsay v. Tuthill Building Material Co.,* 295 Ill. 395, 129 N. E. 127, 36 A. L. R. 23; *Windsor Reservoir & Canal Co. v. Smith,* 92 Colo. 464, 21 Pac. (2d) 1116; *City of Altus v. Millikin,* 89 Okl. 1, 223 Pac. 851.)

The complaint alleges, among other things, that appellant's log pond was attractive to children; that it allured and attracted children of tender years to it to play; that it was dangerous, and that appellant knew the pond was attractive to children, that it was alluring and attracting children of tender years to it to play, and that it was dangerous, all of which stands admitted by the general demurrer of the appellant. So that, without expressing an opinion as to whether respondents' complaint states a cause of action, entitling respondents to recover upon the grounds and for the reasons stated in the majority opinion, I am fully convinced that it states a good cause of action against the appellant under the "attractive nuisance" doctrine. Therefore, while I do not concur in the majority opinion in so far as it refuses to apply the attractive nuisance doctrine to the case at bar, inasmuch as the complaint states a cause of action based upon that doctrine, I concur in the conclusion of the majority, that the respondents are entitled to recover and to that end that the judgment ought to be affirmed, and I base my concurrence on the rule announced in *Gould v. Hill,* 43 Ida. 93, 251 Pac. 167, to the effect that a plaintiff may recover if his complaint states *any* cause of action entitling him to relief, either at law or in equity.

BUDGE, J., Dissenting.—The material allegations of the complaint in this action may be stated concisely as follows:

That appellant is a corporation; that it owns and operates a sawmill and lumber plant near the town of Emmett; that upon its property is located a pond constructed and maintained by it for the purpose of holding logs thereon during the operation of its mill; that this property was fenced upon three sides; that a number of paths led from the highway to the property of appellant and that at one point, where several paths joined, the lower portions of the pickets of the fence had been knocked or worn away; that on the fifth day of April, 1931, one Steele was in the employ of appellant as a caretaker, watchman, agent and employee in charge of said property; that on the said fifth day of April, Lucio B. Bicandi, together with two playmates, proceeded to the east fence along one of the pathways, went under the fence and proceeded to a point upon the premises of appellant known as the "island"; that at said time Steele was standing approximately 150 feet west and south of the hole in the fence and watched the boys enter into the mill site; that Steele asked the boys where they were going, to which they answered they were going to the "island" to play, to which Steele replied in substance and effect, all right; that the boys proceeded along and upon the "island" and afterward commenced to play upon the logs of appellant floating in the mill pond; that one of the logs rolled throwing Lucio B. Bicandi and another boy into the mill pond and they were drowned.

To this complaint appellant filed a general demurrer, which was overruled. Appellant answered denying each and all of the allegations of respondents' complaint, and further answering and as an affirmative defense, alleged contributory negligence upon the part of Lucio B. Bicandi and upon the part of the parents of said Lucio B. Bicandi. Upon the issues made by the pleadings the cause was tried to the court and jury and resulted in a verdict in favor of respondents, whereupon appellant moved the court for judgment for appellant notwithstanding the verdict. The motion was denied and the clerk was directed to enter a judgment on the verdict, and this appeal is from the judgment.

Appellant assigns as error: First, that the court erred in overruling appellant's demurrer to the complaint; second, that the court erred in denying defendant's motion for a judgment in its favor notwithstanding the verdict. Three other errors are predicated upon the action of the court in refusing to give certain instructions to the jury.

In my opinion there are but two questions for determination: First, Was the construction, maintenance and use of the mill pond by appellant for the purposes as alleged in the complaint an attractive nuisance such as would render appellant liable under the pleadings and proof as disclosed by the record? From an examination of the authorities I am not of the opinion that the construction, maintenance and use of the mill pond by appellant constituted an attractive nuisance, nor that a recovery could be had upon this theory of the case. (45 C. J., secs. 183, 188, p. 784, sec. 174, p. 772, sec. 162, p. 765; *Smith v. McGoldrick Lumber Co.*, 124 Wash. 363, 214 Pac. 819; *Barnhart v. Chicago, M. & St. P. R. Co.*, 89 Wash. 304, 154 Pac. 441; *Williams v. Kansas City etc. Ry. Co.*, 222 Mo. App. 865, 6 S. W. (2d) 48; *Raeside v. Sioux City*, 209 Iowa, 975, 229 N. W. 216; *Field v. City of Racine*, 203 Wis. 149, 233 N. W. 611; *Peters v. Bowman*, 115 Cal. 345, 47 Pac. 113, 56 Am. St. 106; *Polk v. Laurel Hill Cemetery Assn.*, 37 Cal. App. 624, 174 Pac. 414; *Reardon v. Spring Valley Water Co.*, 68 Cal. App. 13, 228 Pac. 406.)

The case throughout was tried solely upon the theory of an attractive nuisance and not upon the negligence of the servant of appellant. The court's instructions are limited to a recovery upon that theory and recovery was had upon that theory and none other. Neither was the question of whether the servant acted within or without the scope of his authority determined by or submitted to the jury. The case was presented by appellant and respondents upon the attractive negligence theory and no other, which raises the second point, namely: Can a recovery be upheld on appeal upon any other theory than the one upon which the cause was tried and presented and upon

which the verdict was based? The rule would seem to be that where both parties try a case throughout upon an agreed theory, upon appeal the case must be determined upon the theory adopted by the parties. (*Brown v. Hardin,* 31 Ida. 112, 169 Pac. 293; *Hindman v. Oregon Short Line R. Co.,* 32 Ida. 133, 178 Pac. 837; *In re McVay's Estate,* 14 Ida. 56, 93 Pac. 28; *McDaniel v. Moore,* 19 Ida. 43, 112 Pac. 317; *Milner v. Earl Fruit Co.,* 40 Ida. 339, 232 Pac. 581; *Waite v. C. E. Shoemaker & Co.,* 50 Mont. 264, 146 Pac. 736; *Herbert v. Wagg,* 27 Okl. 674, 117 Pac. 209; *Hanchett v. Wiseley,* 107 Cal. App. 230, 290 Pac. 311; *Midland Valley R. Co. v. Charter,* 115 Okl. 51, 241 Pac. 749.)

The judgment should be reversed.