612 P.2d 142

**James W. HUYCK, Plaintiff-Appellant,**

**v.**

**HECLA MINING COMPANY, a corporation; and James Striker, Defendants-Respondents.**

No. 12559.

Supreme Court of Idaho.

June 4, 1980.

Thomas A. Mitchell, Coeur d'Alene, for plaintiff-appellant.

William W. Nixon of Nixon, Nixon, Lyons & Bell, Coeur d'Alene, John G. Layman of Layman, Mullin & Etter, Spokane, Wash., for defendants-respondents.

SHEPARD, Justice.

This is an appeal from a summary judgment issued in favor of defendants-respondents, Hecla Mining Company and James Striker. We affirm.

Hecla Mining Company is the owner and James Striker the lessee of certain real property in Shoshone County, Idaho, upon which is located a mine. Access to the mine is provided by a private road known as Mill Creek Road, which is approximately one mile in length from the point at which it diverges from a public road. Approximately six months prior to the accident which is the subject of this litigation, Striker caused a barrier to be erected across that private road. This barrier consisted of two yellow posts on either side of the road between which was hung a one inch yellow steel cable, from which was hung an aluminum reflector some thirty inches long and three inches in width.

Plaintiff-appellant Huyck was riding a motorcycle in the company of his eleven-year-old daughter, who was also riding a motorcycle. Huyck, riding at 25–30 miles per hour, rounded a corner and traveled a slightly rising straight stretch of road until he collided with the cable stretched across the roadway. Huyck did not observe the cable until he was within approximately fifteen feet of it and was unable to stop his motorcycle or otherwise avoid striking it. At the time of the accident the weather was fair and visibility was good. Huyck had traveled the road many times between 1968 and the date of the accident in 1973. Huyck knew there were other cables across other roadways in the area, but did not remember observing this particular barrier prior to the accident.

Following the filing of plaintiff-appellant Huyck's complaint, defendants filed and Huyck answered interrogatories. Counsel for defendants took a deposition from Huyck, which consisted solely of questions propounded by defense counsel and Huyck's answers thereto. Defendants filed a motion for summary judgment, and affidavits in support thereof were filed by defendants. No affidavits or other documentation were filed by Huyck in opposition to the motion for summary judgment.

■ The trial court granted summary judgment in favor of the defendants, holding that Huyck was a trespasser and that defendants had violated no duty to Huyck and hence were not liable for any injuries he may have sustained.

This Court has often stated that summary judgment should be granted only when the pleadings, depositions and admissions, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. The facts are to be liberally construed in favor of the party opposing the motion, who is also to be given the benefit of all favorable inferences which might be reasonably drawn from the evidence. *Farmer's Ins. Co. v. Brown*, 97 Idaho 380, 544 P.2d 1150 (1976); *Salmon Rivers Sportsman Camps, Inc. v. Cessna Air Co.*, 97 Idaho 348, 544 P.2d 306 (1975); I.R.C.P. 56(c).

■ On appeal, Huyck argues that there was an implied invitation to use the road and hence he did not fall within the category of trespasser, as held by the trial court. Here, there is no question but that the road was private property and the record reflects no indication by Huyck that he believed it to be a public road. Huyck's argument is based on the fact that the private road connected with a public road, that at the juncture no signs were posted indicating the existence of private property, and that the barrier across the road was only placed 300 feet in distance from the mine, rather than close to the juncture with the public road. We disagree. We find no indication in the record that Huyck was lured onto the private road and thus met with a dangerous condition. We are cited to no rule of law which requires the owner or possessor of real property to place signs thereon indicating its status as private property. Huyck's own testimony indicated he had traveled the road many times over a period of five years, both in the winter and summer, and knew that it led only to a mine.

The same argument as to implied invitation was made in *Bosiljevac v. Ready Mix Concrete Co.*, 182 Neb. 199, 153 N.W.2d 864 (1967). There, as here, plaintiff was injured while riding his motorcycle when he collided with a steel cable which had been strung across defendant's private road. The Nebraska court recognized that a private way may be constructed in such a way to amount to an implied invitation and a person using such a private road would not be a trespasser. However, the court stated that, "[t]he rules regarding the existence of an implied invitation, when it is difficult to distinguish a private road or way from a public road, have their limitations and in instances where the possessor of the land erects a barricade which is readily observable or posts notices indicating the nature of the private way, such rules are not applicable." *Id.* 153 N.W.2d at 867.

In the instant case, there is no showing but what the barrier was readily observable. Huyck indicates no conditions which would make the barrier less than readily observable. Any inferences militate against Huyck in that his daughter, who was riding her motorcycle some distance behind Huyck, was able to stop without striking the barrier.

Hence, we agree with the holding of the trial judge that Huyck's status was that of trespasser. *See Bicandi v. Boise Payette Lumber Co.*, 55 Idaho 543, 44 P.2d 1103 (1935). Therefore, the duty of the defendants, as owners or tenants, was to refrain from wilful or wanton acts which might cause injuries. We further agree with the holding of the trial court that defendants-respondents had violated no duty.

It is also suggested that *Rowland v. Christian*, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968), and the annotation, Modern Status of Rules Conditioning Landowner's Liability Upon Status of Injured Party as Invitee, Licensee, or Trespasser, 32 A.L.R.3d 508, should prompt this Court to abolish the distinction between trespassers, licensees and invitees as the controlling test in determining the scope and extent of the duty of care owed by landowners to entrants. We decline the invitation.

*Rowland v. Christian, supra,* involved a social guest, not a trespasser. Also, it has been argued that the basis for *Rowland v. Christian, supra,* was a particular California statute. We are cited to no parallel statute in Idaho. This Court, in *Springer v. Pearson*, 96 Idaho 477, 531 P.2d 567 (1975), stated, "[w]e decline to pass upon appellant's invitation for this Court to reassess well established precedent in this state recognizing distinctions between the duty of care owed to licensees and invitees. We continue to adhere to the distinctions most recently pronounced in *Mooney v. Robinson.* [93 Idaho 676, 471 P.2d 63 (1970)]" *Id.* at 479, 531 P.2d at 569.

The order of the trial court issuing summary judgment in favor of defendants-respondents is affirmed. Costs to respondents.

BAKES, J., and MAYNARD and WALTERS, JJ. Pro Tem., concur.

BISTLINE, Justice, dissenting.

Simply put, the issue in the present case is whether summary judgment should have been granted on the question of whether Huyck was negligently misled into believing that he was traveling on a public road. In deciding this issue, not only must all favorable inferences be given to Huyck, but, moreover, even if the evidentiary facts are not in dispute, a grant of summary judgment would be improper if the facts could support reasonable contradictory inferences. *Lundy v. Hazen*, 90 Idaho 323, 411 P.2d 768 (1966); *Deshazer v. Tompkins*, 89 Idaho 347, 404 P.2d 604 (1965).

The law of implied invitation to use a road is rather straightforward:

"A possessor of land who so maintains a part thereof that he knows or should know that others will reasonable believe it to be a public highway is subject to liability for physical harm caused to them, while using such part as a highway, by his failure to exercise reasonable care to maintain it in a reasonably safe condition for travel." Restatement (Second) of Torts § 367 (1965).

As stated in Comment (a) to that section: "One whom a possessor of land intentionally or negligently misleads into believing that part of his land is a public highway, is entitled to expect that the possessor will afford him a security similar to that which he would be entitled to expect were the land actually a highway." The Special Note to § 367 states that "[t]he injured person, being misled by the other's conduct, is clearly not a trespasser. . . ."

In *Rogers v. Bray*, 16 Wash.App. 494, 557 P.2d 28 (1977), plaintiff rode his motorcycle into a chain stretched across a private trailer access road. This access road branched off of Red Marble Road, which was also private but was commonly used by the public. About forty no trespassing signs were attached to trees on both sides of Red Marble Road, and one such sign hung from the chain while one was attached to one of the trees supporting the chain. Plaintiff did not see the no trespassing signs. The trial court granted defendants' motion for summary judgment, but the judgment was reversed on appeal and remanded for trial:

> "The defendants' knowledge that motorcyclists used Red Marble Road, coupled with (1) the fact that the access road was well used, and (2) the absence of a sign warning travelers that the access road was not for public use, creates by inference a question of fact as to whether Rogers was negligently misled into believing that he was traveling on a road commonly used by the public. . . .
> If Rogers was misled, then he was not a trespasser and defendants had the duty to exercise reasonable care to maintain the road in a reasonably safe condition for travel." *Id.* 557 P.2d at 29–30 (citation omitted).

Ordinarily, I would now simply point out the facts set forth in the record which show that there is a question of fact as to whether Huyck reasonably believed that he was traveling on a public roadway. However, due to the majority's distortion of the facts in favor of the party *seeking* summary judgment, I feel that I must specifically correct the misstatements made by the Court.

First, the Court states that "the record reflects no *indication* by Huyck that he believed it to be a public road." (Emphasis added.) The following, which I find by the rather simple expedient of reading the record, has apparently escaped the rest of the Court's attention:

From Huyck's answers to interrogatories:

"Interrogatory No. 34: State whether or not immediately prior to the accident you knew that you were riding upon a private road.

"ANSWER: There was no indication that the road was private. No sign or marking to indicate this."

From Huyck's oral deposition:

"Q Now, in riding throughout that country you frequently find yourself off of public roads onto private roads, don't you?

"A I know of one place up there that is definitely marked private up the old Mullan road, little side trail. It is also marked at the other end of the road leading into it. That is up in the country where I usually go hunting. I can't think of any other places where there is any sign marking private.

"Q You know as a fact that a lot of those roads in that country are private roads only, owned and maintained by the mining companies?

"A No, I don't know that as a fact and assumed most of the roads up in there were Forest Service roads. I mean, I knew that some of them were mining roads and stuff like that, but I had no idea that most of those roads were on private property, if that is what you are asking.

"Q You knew this road led directly to a mine?

"A There had been nobody working up there that I know of for the first few years I had been there. If there was, I was unaware that anybody was working the old mine digging up there."

Moreover, in setting forth the facts of this case the Court has failed to mention

that there is what appears to be a Forest Service sign at the junction of the public and private road,[1] and that the arrow pointing down the public road says Grouse Creek while *the arrow pointing down the private road says Mill Creek.* The Court also failed to mention the evidence from Huyck's oral deposition that at least indicates that this road was used by the public:

"Q How many times do you think you were on the road from '68 to the date the accident happened?

"A Oh, many times.

"Q And what person or persons had either ridden with you on the same bike or ridden on other bikes with you when you had been up in that area?

"A Irvin Arthur; his two boys, Clifford and Billy; Terry Snider; Larry Davis. There may even be some other people I have ridden with I can't think of."

While it is true, as the Court notes, that there is no rule of law requiring the owner of real property to put up signs indicating that the property is private, nonetheless the owner of that property does have a duty of reasonable care where he maintains a part of that property so that it appears to be a public road. Where a Forest Service sign marks the road, where there is nothing to indicate that it is a private road, and where there is some evidence that the road is used by the public, then there is a jury question as to whether the road reasonably appeared to be a public road.

Secondly, the Court maintains that "Huyck indicates no conditions which would make the barrier less than readily observable. Any inferences militate against Huyck in that his daughter, who was riding her motorcycle *some distance behind Huyck,*

was able to stop without striking the barrier." (Emphasis added.) The first sentence is factually incorrect; the second is patently absurd. The Court apparently is arguing that there is no question that the barrier was readily observable based on the description of the barrier in the record, and, given that conclusion, the law of implied invitation has no applicability.

I cannot agree from the record presented that there is no question of fact as to how visible the barrier was. The trial court found that "[t]he barrier was erected on a straight stretch of the road and was in no manner concealed from the view of anyone traveling said road-way." The question of concealment, however, differs substantially from that of visibility. The Court, without benefit of seeing the barrier, nonetheless concludes that it was readily observable. I prefer not to take judicial notice of the visibility of a particular cable in a particular setting, and especially not on a motion for summary judgment where the following appears in the record:

"Interrogatory No. 31: Set forth each and every fact and all evidence upon which you base your claim for negligence.

"ANSWER: The cable was not clearly marked. It was a rusty yellow, did not have any flags marking it, and no posted warning. Sometime after my accident, they did attach red marking on it, but even that evidently was not any better, as two weeks to the day at nearly the same time of day, another man hit the same said cable. He fared somewhat better than I. After the second such accident involving said cable, notices are now posted conspicuously warning anyone coming on the road that there is a gate

---

1. Respondents knew of this sign. In his oral deposition, respondent Striker testified as follows:

"Q Are you familiar with the sign at the junction there, one of which arrows points to Grouse Creek and one of which points to Mill Creek?

"A Yes. We put the sign up a couple of times.

"Q You have had to restore it when somebody has taken it down, is that what you are saying?

"A No, we just stand it up when we clear the corner out with the dozer so it—

"Q But it has been there ever since you first leased the place, the sign with the two arrows?

"A Off and on, yes. It has been replaced at least once.

"Q That is a Forest Service sign as far as you know?

"A As far as I know."

ahead. I think we have color pictures indicating this."

In his deposition, Huyck stated "[a]ll I know, I was on top of it and grabbed both brakes and that was it. . . . Cable was a rusty yellow color. There was something hanging on it, I don't know what it was. . . . Whether it was aluminum or what, I really couldn't tell you what, I didn't see it after I hit it."

James Striker in his deposition described the sign as follows:

"Q Would you describe what was installed there as you saw it?

"A Made a turnaround, drove two forty pound rails on the outside of the road, one on each side, and strung I believe a ⅞ or 1 inch, I am not sure of the cable size. We strung a cable across there with a bulletproof cover for the lock, painted everything yellow and put an aluminum flasher in the center.

"Q Can you describe this aluminum flasher, what is its shape?

"A It was rectangular, three inches wide, thirty inches long.

"Q It was a piece of aluminum, is that what is was?

"A Right.

"Q Not specially treated in any way?

"A No, it was left clear. At the time it was first put in there was a yellow flasher on this but the kids took it off, run off with it.

"Q And were there any warning signs indicating that one was coming to such a diversion put up at the time?

"A No."

We therefore have a ⅞ or 1 inch rusty yellow cable stretched across the road, with at most a clear piece of aluminum attached to it. I would not hold on a motion for summary judgment that this is obviously so readily observable that Huyck could not reasonably believe that he was traveling on a public road. This was not a paved city road and it is for a jury to decide whether or not Huyck was negligent in failing to see the cable.

The Court further asserts, however, that because Huyck's daughter stopped before hitting the cable, "any inferences militate against Huyck." Huyck's daughter, traveling behind him, undoubtedly saw him run into the cable. There is no evidence that she observed the cable itself before she saw her father's impact into it. It is irrational to maintain that a wire across a road is readily observable because someone coming along behind sees the accident in time to stop.

Thus, drawing all inferences most favorable to Huyck, there were no signs to indicate that Mill Creek Road was private, it appeared to be a public Forest Service road, the public sometimes used the road, and the barrier was not readily observable. Thus there is a question of fact as to whether Huyck reasonably believed that he was traveling on a public roadway. If he so believed, and if the defendants knew or should have known that others would reasonably believe the road to be a public road, then Huyck was not a trespasser and the defendants had a duty to use reasonable care to maintain the road in a reasonably safe condition. *Rogers v. Bray, supra*; Restatement (Second) of Torts § 367, *supra.* Although a jury may not find in favor of Huyck on these matters, he has presented enough evidence to preclude his being deprived of his constitutional right to a jury trial.

Finally, the Court's discussion of whether the distinction between trespassers, licensees and invitees should be abolished is totally unwarranted in this case, where neither party has raised or argued the issue.