SANDRA N. HAGA v. WILBERT L. CHILDRESS

No. 7821SC1077

(Filed 16 October 1979)

**Landlord and Tenant § 8.5— landlord's repair of faucet handle—injury to tenant's child—no reliance on landlord's assurances of repair**

> In an action to recover for personal injuries sustained by plaintiff as a result of the alleged negligence of defendant in making repairs to a hot water faucet handle in premises leased by defendant to plaintiff's parents, the trial court properly entered summary judgment for defendant, even if defendant was negligent in his repair of the faucet handle, since plaintiff's sworn state-

ment showed that she knew that the handle had not been repaired and that she did not act in reliance on defendant's assurances that repair was properly made, and, in the absence of such reliance, there was no basis on which liability on the part of defendant could be premised.

APPEAL by plaintiff from *Lupton, Judge.* Judgment entered 14 July 1978 in Superior Court, FORSYTH County. Heard in the Court of Appeals 27 August 1979.

In this civil action plaintiff seeks to recover damages for personal injuries suffered by her as a result of the alleged negligence of the defendant in making repairs to a hot water faucet handle in premises leased by defendant to plaintiff's parents. In her complaint plaintiff alleged: She lived with her parents, who leased their house from defendant. On or about 1 July 1976, defendant undertook to repair the hot water faucet in the bathroom of the leased premises. In so doing, defendant negligently failed to repair the faucet properly in that he failed to secure the faucet handle to the faucet stem, thus allowing the handle to come loose easily and fall from the stem. When, on or about 26 July 1976, plaintiff undertook to bathe in the bathroom of the leased premises, and while she was turning on the hot water, the handle to the hot water faucet came loose and fell from the faucet stem. Because there was no functioning thermostat on the hot water heater on the leased premises, the water pouring forth was extremely hot. After several attempts to replace the hot water faucet handle, plaintiff underwent an epileptic seizure, fell into the bathtub, and was severely burned. Plaintiff alleged that her injuries were the proximate result of defendant's negligence in failing to repair properly the hot water faucet handle which he undertook to repair while leasing a house containing a hot water heater with no functioning thermostat.

In his answer defendant admitted that plaintiff's parents leased premises owned by him. He denied all allegations of negligence on his part and pleaded plaintiff's contributory negligence in bar of any recovery.

After taking depositions of plaintiff and of her father, William B. Haga, defendant moved for summary judgment. In her deposition plaintiff testified to the following: Plaintiff was living with her parents in a house which they rented from defendant. On or about 1 July 1976, defendant-lessor came to repair the hot

water faucet handle on the bathtub in the house. Defendant took the faucet with him and returned on 15 July to put the handle back on. At that time he told plaintiff that the handle was fixed. Between 15 July and 23 July plaintiff did not use the bathtub in her parent's house; however, she remembered that during that period the hot water faucet handle had fallen off while her father was using it. On 23 July plaintiff sat on the edge of the tub in the bathroom and turned the hot and cold water handles to regulate the temperature of the water. The hot water handle fell off, and she tried several times to put it back on, but she was unable to do so. At that moment plaintiff panicked and suddenly experienced an epileptic seizure. She had suffered seizures since the age of four and regularly took medication to control her condition. On 23 July she had taken her medication both in the morning and in the afternoon. As a result of her seizure, plaintiff became unconscious, and her right hip and her hand were severely scalded by the hot water. She only regained consciousness after she was out of the tub and was walking down the hallway. In his deposition plaintiff's father stated that his daughter apparently fell into the hot water after her epileptic seizure. In an affidavit, plaintiff stated that she had told defendant she was subject to epileptic seizures and that the matter of her epilepsy had been discussed in defendant's presence on numerous occasions prior to the time of her injuries complained of in this action.

The trial judge granted defendant's motion for summary judgment. From this judgment, plaintiff appeals.

*Pfefferkorn & Cooley, by David Pishko for plaintiff appellant.*

*Womble, Carlyle, Sandridge & Rice by Allen R. Gitter and Frederick J. Murrell for defendant appellee.*

PARKER, Judge.

The sole question presented on this appeal is whether the trial court properly granted summary judgment for defendant-lessor. We hold that he did.

Upon a motion for summary judgment, the moving party bears the burden of establishing that there is no genuine issue of material fact remaining for determination, and that he is entitled to judgment as a matter of law. *Savings & Loan Assoc. v. Trust Co.,* 282 N.C. 44, 191 S.E. 2d 683 (1972).

Plaintiff's right of recovery in this action depends upon the existence of some duty of care owed to her by defendant. The general rule governing a lessor's liability for personal injuries suffered by his tenant or by a member of the tenant's family by reason of some defective condition on the leased premises has been stated by our Supreme Court as follows: "In the absence of an express covenant to repair or keep in repair, a landlord is not ordinarily held liable for personal injuries to the tenant or his family by reason of defective conditions of the premises. And even with a covenant to repair, the general rule is that such liability will not usually be imputed." *Hudson v. Silk Co.*, 185 N.C. 342, 343, 117 S.E. 165 (1923); *see also, Moss v. Hicks*, 240 N.C. 788, 83 S.E. 2d 890 (1954); *Fields v. Ogburn*, 178 N.C. 407, 100 S.E. 583 (1919). An exception to this general rule is recognized in a case where the landlord gratuitously undertakes to make repairs. In such a case the lessor assumes the duty to exercise reasonable care in making the repairs, and proof of a breach of that duty which proximately causes injury will support a finding of liability on the part of the lessor. *Carson v. Cloninger*, 23 N.C. App. 699, 209 S.E. 2d 522 (1974). Although not articulated in *Cloninger*, it has often been stated that the basis for imposing liability upon a lessor for injury proximately caused by his negligence in gratuitously making repairs is the reliance which the tenant or a member of his family places on the lessor's assurances that the repairs have been properly made. *See generally,* Annot. 150 A.L.R. 1373, 1379 (1944). For example, in *Rubin v. Girard Trust Co.*, 154 Pa. Super. 257, 35 A. 2d 601 (1944), a case in which the court held a lessor liable for personal injuries suffered as the result of repairs negligently made to a porch, the court stated:

> The basis of the liability of a landlord who gratuitously undertakes to make repairs performed negligently is the representation—that the repairs have been properly made—upon which the tenant relies to his injury. In the present case, the landlord impliedly represented to the tenant that all necessary repairs had been made . . . . When the work was done, the tenant had a right to assume that the necessary work had been ascertained and performed. *Her injury resulted from her reliance on that assumption.* (Citations omitted.) Id. at 260, 35 A. 2d at 602. (Emphasis added.)

Thus, where the lessor or the member of his family who suffers injuries knows that repairs have not been properly made, the necessary element of reliance is missing, and there is no basis for recovery in tort. *See, e.g. Parrish v. Witt*, 171 Mont. 101, 555 P. 2d 741 (1976); *Rhoades v. Seidel*, 139 Mich. 608, 102 N.W. 1025 (1905).

Applying these principles to the present case, plaintiff's own deposition establishes as a matter of law that she is not entitled to recover. In her deposition plaintiff testified that defendant had attempted to repair the hot water faucet handle and that when he came to her father's house on 15 July to put the handle back on, defendant told her that it was repaired. However, plaintiff also testified as follows:

Q. All right. Now I'm addressing your attention to the period of time between July 15 and July 23, do you understand that?

A. Yes, sir.

Q. Fine. During that period of time, do you know whether or not the hot water handle on the water control device ever fell off prior to the time when you say it fell off when you were using it?

A. I—I don't remember, but seems like it did one time when my father was using it.

Q. Do you remember how many days that was either after Mr. Childress brought it back or before your occurrence?

A. Oh, I'd say maybe about—uh—about two days before.

Q. Did you speak with your father about that that same day?

A. Yes I—I told him it looked like it wasn't fixed.

Q. And what did he say to you?

A. Well—uh—I don't remember, really.

Q. But you do remember telling him it looked like to you it wasn't fixed?

A. That's right.

Q. And this was about two days before you fell into the tub?

A. Yes, sir.

Assuming arguendo that defendant was negligent in his repair of the hot water faucet handle, plaintiff's sworn statement shows that she knew that the handle had not been repaired and that she did not act in reliance on defendant's assurances that repair was properly made. In the absence of such reliance, there is no basis on which liability on the part of the defendant can be premised in this case.

We note in passing that in 1977 the General Assembly enacted the Residential Rental Agreements Act, Ch. 770, 1977 Sess. Laws, now codified as G.S. §§ 42-38 to 44. That act imposes new duties upon a lessor of a dwelling unit to provide and maintain the leased premises in a fit and habitable condition. It became effective on 1 October 1977, applicable to all rental agreements entered into, extended, or renewed automatically or by the parties after that date. Thus, the Act is not applicable in the present case. We express no opinion as to whether, if applicable, the Act would give rise to liability for personal injuries caused by a lessor's breach of statutorily imposed duties. *See generally*, Fillette, *North Carolina's Residential Rental Agreements Act: New Developments for Contract and Tort Liability in Landlord-Tenant Relations*, 50 N.C.L. Rev. 785 (1978). Decision of that question must await a case in which the Act is applicable. Decision of the present case is controlled by the law as it existed prior to the effective date of the Act.

Affirmed.

Chief Judge MORRIS and Judge MARTIN (Harry C.) concur.