LAWRENCE O. LENZ v. RIDGEWOOD ASSOCIATES, A GENERAL PARTNERSHIP,
AND WEAVER REALTY COMPANY, INC.

No. 8118SC289

(Filed 15 December 1981)

1. **Landlord and Tenant § 8.3— unsafe condition in common area—duty of landlord to tenant**

    Under the applicable provision of North Carolina's Residential Rental
    Agreement Act, G.S. §§ 42-38, 42-40, 42-42, and 42-44, landlords are under a
    duty to keep the common area of their premises in a safe condition. A violation
    of the statute does not constitute negligence per se, rather a violation is only
    *evidence of negligence.* Therefore, *in a personal injury action whereby*
    plaintiff-tenant alleged defendant-landlord failed to maintain the common areas
    of his apartment complex in a safe condition resulting in an injury to plaintiff
    when he slipped and fell on an icy walkway in the apartment complex, and
    where plaintiff's evidence would permit a jury to find that plaintiff was de-
    fendant's tenant; that defendant allowed a natural accumulation of ice to re-
    main on the common areas of their premises devoted to plaintiff's use; that
    such accumulation of ice was an unsafe condition; that defendant knew or in
    the exercise of ordinary care should have known of the presence of the ice;
    that defendant failed to exercise ordinary care to remove the unsafe condition;
    and that such failure was the proximate cause of plaintiff's injury, plaintiff's
    evidence was sufficient to overcome defendants' motion for directed verdict.

2. **Landlord and Tenant § 8.4— contributory negligence on part of tenant—jury question**

    In an action where tenant was injured when he slipped and fell on an icy
    walkway in his apartment complex, it was a jury question whether plaintiff, as
    an ordinary prudent person, would be required to remain in his apartment
    rather than attempt to reach his car; or, whether plaintiff as an ordinary pru-

> dent person, exercising reasonable care for his safety, might attempt to leave his apartment on a reasonably necessary mission.

APPEAL by plaintiff from *Helms, Judge.* Judgment entered 25 November 1980 in Superior Court, GUILFORD County. Heard in the Court of Appeals 21 October 1981.

Plaintiff, a resident of the Ridgewood Apartments in Greensboro, brought this personal injury action against defendants, the owners and operators of Ridgewood Apartments. Plaintiff alleged that he was injured when he slipped and fell on an icy walkway in the apartment complex, and that his injuries were caused by the negligent failure of defendants to maintain the common areas of the apartment complex in a safe condition. After the pleadings were joined, defendants moved for summary judgment, which motion was denied by Judge Hal H. Walker. The case subsequently came on for trial before Judge Helms. At the close of plaintiff's evidence, defendants' motion for a directed verdict was granted by the trial court. From that judgment, plaintiff has appealed.

*Donald K. Speckhard, for plaintiff-appellant.*

*Perry C. Henson, by Jack B. Bayliss, Jr., for defendant-appellees.*

WELLS, Judge.

In one of his assignments of error, plaintiff contends the trial court erred in granting defendants' motion for a directed verdict at the close of plaintiff's evidence. We agree with plaintiff's argument and reverse.

The grounds stated by defendants in their motion clearly define the issues in the appeal. Defendants' motion asserted that because the evidence showed the ice on defendants' premises resulted from a natural accumulation, defendants had no duty to plaintiff; but that if there were a duty, defendants had not breached it; and that if there were evidence of a duty and a breach, plaintiff's own evidence showed him to be contributorily negligent as a matter of law.

[1]  We first address the issue of duty. At the outset, we emphasize the residential tenant-landlord relationship between plain-

tiff and defendants in this case. The common law duty of a landlord to maintain premises in a safe condition so as to avoid injury to his tenants has been the subject of a number of decisions of our appellate courts. There are two lines of cases: one, those involving the condition of the premises occupied by the tenant, and two, those involving the condition of common areas, or those portions of the premises remaining under the control of the landlord. We are concerned here with the second line of cases, but emphasize that the two lines must be carefully distinguished. *See Thompson v. Shoemaker*, 7 N.C. App. 687, 173 S.E. 2d 627 (1970). In the first line—those cases dealing with the condition of the demised premises—our appellate courts have consistently held that the failure of the landlord to maintain the demised premises in a safe condition does not ordinarily give rise to an action by the tenant for personal injury arising out of a defective condition of the *demised* premises. *Robinson v. Thomas*, 244 N.C. 732, 94 S.E. 2d 911 (1956) (porch floor gave way); *Harrill v. Refining Co.*, 225 N.C. 421, 35 S.E. 2d 240 (1945) (service station door fell); *Leavitt v. Rental Co.*, 222 N.C. 81, 21 S.E. 2d 890 (1942) (ceiling plaster fell); *Jordan v. Miller*, 179 N.C. 73, 101 S.E. 550 (1919) (hole in stairway).[1] *Floyd v. Jarrell*, 18 N.C. App. 418, 197 S.E. 2d 229 (1973) (rat bite). *See also Knuckles v. Spaugh*, 26 N.C. App. 340, 215 S.E. 2d 825 (1975), *cert. denied*, 288 N.C. 241, 217 S.E. 2d 665 (1975); *Compare Flying Club v. Flying Service*, 254 N.C. 775, 119 S.E. 2d 878 (1961).[2]

In the second line of cases, however, our appellate courts have recognized the duty of a landlord to safely maintain those portions of rental property over which he maintains control, including so-called "common areas", such as hallways, steps, and sidewalks. In *Drug Stores v. Gur-Sil Corp.*, 269 N.C. 169, 152 S.E.

---

1. Injury to invitee, but frequently cited and quoted for general rule controlling injury to tenant.

2. We note that our courts have recognized a cause of action for injuries caused by the negligent acts of the landlord in making repairs to the *demised* premises. *See Livingston v. Investment Co.*, 219 N.C. 416, 14 S.E. 2d 489 (1941); *Haga v. Childress*, 43 N.C. App. 302, 258 S.E. 2d 836 (1979), *disc. rev. denied*, 299 N.C. 120, 261 S.E. 2d 923 (1980), and cases and authorities cited and discussed therein.

2d 77 (1967), plaintiff leased the basement of a building owned by defendants. Plaintiff's space was flooded after a heavy rain, causing damage to plaintiff's goods. Plaintiff alleged that defendant had failed to exercise ordinary care to provide proper drainage. The trial court sustained a demurrer to plaintiff's complaint. In overruling the court, our Supreme Court stated the rule in such cases as follows:

> Where a landlord leases only a portion of the premises to a tenant and retains the remainder under his control . . . he is bound to use reasonable and ordinary care in managing the part over which he retains control, and is liable for negligence in respect thereof proximately resulting in injury to his tenant.

In support of the quoted rule, the court in *Drug Stores* cited *Steffan v. Mieselman*, 223 N.C. 154, 25 S.E. 2d 626 (1943), where the court affirmed a judgment for plaintiff for damages to his restaurant resulting from the overflow of his landlord's second story toilet.

In *Hood v. Mitchell*, 206 N.C. 156, 173 S.E. 61 (1934), the Court upheld recovery by plaintiff-tenant for injuries he received as a result of defendant-landlord's negligent failure to properly maintain an elevator in the building where plaintiff's office was located.

Against this background of the common law as it has been applied in North Carolina, we now must consider the impact of the pertinent provisions of North Carolina's Residential Rental Agreement Act[3] on plaintiff's claim in this case. In pertinent part, the Act provides as follows:

> § 42-38. Application.—This Article determines the rights, obligations, and remedies under a rental agreement for a dwelling unit within this State.
>
> § 42-40. Definitions.—For the purpose of this Article, the following definitions shall apply:
>
>       . . .

---

3. G.S. 42-38 through 44. For a thorough discussion of the Act, *see* Fillette, North Carolina's Residential Rental Agreements Act: New Developments for Contract and Tort Liability in Landlord-Tenant Relations, 56 N.C.L. Rev. 785 (1978).

(2) "Premises" means a dwelling unit, including mobile homes or mobile home spaces, and the structure of which it is a part and facilities and appurtenances therein and grounds, areas, and facilities normally held out for the use of residential tenants who are using the dwelling unit as their primary residence.

. . . .

§ 42-42. Landlord to provide fit premises.—(a) The landlord shall:

. . .

(3) Keep all common areas of the premises in safe condition;

. . . .

§ 42-44. General remedies and limitations.—(a) Any right or obligation declared by this Chapter is enforceable by civil action, in addition to other remedies of law and in equity.

. . .

(d) A violation of this Article shall not constitute negligence per se.

In support of their argument as to lack of defendants' duty or lack of a breach thereof in this case, defendants have cited a long line of invitee cases from our appellate courts.[4] We emphasize that invitee cases are not apposite in cases involving actions between landlords and tenants who are injured by the landlord's failure to maintain common areas in safe condition.

We note that neither are "duty to warn" cases apposite here. The duty we recognize in this case is not a duty to warn of unsafe conditions; it is the duty to *correct* unsafe conditions. If such natural accumulations of ice constitute an unsafe condition, the duty is to correct these conditions. By providing that a violation of the statute does not constitute negligence per se, the General

---

4. In one of these cases, *Harris v. Department Stores, Co.*, 247 N.C. 195, 100 S.E. 2d 323 (1957), the evidence seems to indicate that the plaintiff had the status of a tenant, but in its decision, the court treated plaintiff as an invitee and relied on invitee cases in resolving the case against the plaintiff.

Assembly left intact established common law standards of ordinary and reasonable care in such cases, the violation of such a statute being only evidence of negligence. *Cowan v. Transfer Co.* and *Carr v. Transfer Co.*, 262 N.C. 550, 138 S.E. 2d 228 (1964); *Kinney v. Goley and Crowson v. Goley and Noll v. Goley*, 4 N.C. App. 325, 167 S.E. 2d 97 (1969); *see also Mintz v. Foster*, 35 N.C. App. 638, 242 S.E. 2d 181 (1978).

Plaintiff's evidence tends to show that he fell and was injured at about 10:30 a.m. on 20 January 1978. At the place on defendants' sidewalk where plaintiff fell, there was ice which had formed during a previous ice storm a month before, and newer, "slicker" ice which had accumulated during the day and night of 19 January. The accumulation of ice covered all of the sidewalks between his apartment, his point of departure, and the apartment parking lot, his destination. Plaintiff made his way without mishap to the place where he fell, only a few feet from the parking lot. Plaintiff testified in pertinent part as follows:

On the morning of January 20, 1978, I got up around 6:15 and saw that it was very icy outside. Ice had come from the previous night so I didn't plan to go to school. I thought Greensboro College would be closed since so many other schools were closed; but, just to make sure, I called Greensboro College and it had not closed. I called the college around 7:00 o'clock a.m. and told them I would be in a little later because of the ice situation. I wanted to wait but I had classes and the laboratory for the afternoon that I wanted to attend. I called the college again around 8:30 a.m. or quarter to nine and was told that classes were going on and everybody had to come in so there was no reason I shouldn't go. . . . . I waited until approximately 10:30 a.m. because I figured something would be done with the ice by then. The rain—the sleet had stopped early in the morning, I remember, right after I got up, about 6:30, you know—the rain had stopped then where we were at. So about 10:30 a.m. I decided to try to make it to my car and go to school. When I got to my front door I decided that I would take my usual route to my car and I walked very gingerly and carefully over the ice because I knew there was a lot of it and it was very slick. I was raised on it out in the midwest and up north and I was very much aware of what was out there. I had

covered most of the distance to my car and only had a very short distance to go. I had to cross over another patch of ice that was on a concrete base which was the worst part, the slickest part. It wouldn't give and it was on that part just before I got to my car that I slipped. The ice there was fairly uneven. In the place that I walked out, no sand, or anything had been put down on the ice. . . . . .

On cross-examination, plaintiff testified that he could have taken an alternate route from his apartment to the parking lot, over a short span of sidewalk and hence through the grass to the parking lot; but that had he taken such route, he nevertheless would have been faced with negotiating some areas of ice-covered sidewalks.

An exhibit introduced by plaintiff, together with plaintiff's testimony, shows that the route plaintiff chose took him through some grass, but that he traversed more sidewalk on his chosen route than would have been involved on the alternate route.

Plaintiff's evidence, taken as true and considered in the light most favorable to him, *Dickinson v. Pake*, 284 N.C. 576, 201 S.E. 2d 897 (1973), would permit but not require a jury to find that plaintiff was defendants' tenant; that defendants allowed a natural accumulation of ice to remain on the common areas of their premises devoted to plaintiff's use; that such accumulation of ice was an unsafe condition; that defendants knew or in the exercise of ordinary care should have known of the presence of the ice; that defendants failed to exercise ordinary care to remove the unsafe condition; and that such failure was the proximate cause of plaintiff's injury. Since plaintiff was defendants' tenant, defendants were under a duty to keep the common area of their premises in a safe condition. G.S. 42-42(a)(3). Since the duty to keep the common areas in a safe condition implies the duty to make reasonable inspection and correct an unsafe condition which a reasonable inspection might reveal, such a breach of duty would constitute actionable negligence on defendants' part and would support a verdict for plaintiff. *Rappaport v. Days Inn*, 296 N.C. 382, 250 S.E. 2d 245 (1978). We find that plaintiff's evidence was sufficient to overcome the first two grounds asserted in defendants' motion for directed verdict.

[2] This brings us to the third assertion of defendants, that plaintiff was contributorily negligent as a matter of law. Before a motion for a directed verdict at the close of plaintiff's evidence may be granted, plaintiff's evidence must establish plaintiff's negligence so clearly that reasonable minds may not differ, or so clearly that no other reasonable inference may be drawn therefrom. *Rappaport*, supra. *Williams v. Power & Light Co.*, 296 N.C. 400, 250 S.E. 2d 255 (1978); *Daughtry v. Turnage*, 295 N.C. 543, 246 S.E. 2d 788 (1978); *Clark v. Bodycombe*, 289 N.C. 246, 221 S.E. 2d 506 (1975); *Bowen v. Gardner*, 275 N.C. 363, 168 S.E. 2d 47 (1969); *Hunt v. Montgomery Ward and Co.*, 49 N.C. App. 642, 272 S.E. 2d 357 (1980). Stated another way, such a motion may be granted only when plaintiff's evidence leads inescapably to the conclusion that plaintiff was guilty of contributory negligence. Defendants argue that plaintiff went where he knew he would encounter an unsafe or dangerous condition, that he knowingly assumed the risk of walking on slick ice, and that therefore his own negligence caused his injury. Our appellate courts have held that the law imposes upon a person the duty to exercise *ordinary care* to protect himself from injury and to avoid a known danger; and that where there is such knowledge and there is an opportunity to avoid such a known danger, failure to take such opportunity is contributory negligence. *See Williams v. Power & Light Co.*, supra; *Presnell v. Payne*, 272 N.C. 11, 157 S.E. 2d 601 (1967); *Wallsee v. Water Co.*, 265 N.C. 291, 144 S.E. 2d 21 (1965). The standard of care required, however, differs with the exingencies of the occasion. *Wallsee*, supra.

> "[T]he existence of contributory negligence does not depend on plaintiff's *subjective* appreciation of danger; rather, contributory negligence consists of conduct which fails to conform to an *objective* standard of behavior—the care an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury." (Citations omitted)

*Smith v. Fiber Controls Corp.*, 300 N.C. 669, 268 S.E. 2d 504 (1980). "[T]he determination of contributory negligence cannot be predicted on the automatic application of per se rules which do not take into account the particular state of facts presented." *Smith v. Fiber Controls Corp.*, supra.

Thus, contributory negligence per se may arise where a plaintiff knowingly exposes himself to a known danger when he

had a *reasonable* choice or option to avoid that danger, *Smith v. Fiber Controls Corp.*, supra; or when a plaintiff heedlessly or carelessly exposes himself to a danger or risk of which he knew or should have known. *Holland v. Malpass*, 266 N.C. 750, 147 S.E. 2d 234 (1966). But the case is clearly different where plaintiff, as in the case before us, undertakes a reasonably necessary journey or mission or engages in a reasonably necessary activity where there are no reasonable alternatives open to him even in the face of risk of harm to himself. *Rappaport*, supra. While we have not been able to find a previous North Carolina case exactly in point, the majority of cases from other jurisdictions reach the conclusion that plaintiffs in such situations are not contributorily negligent as a matter of law where they are attempting to enter or leave their leased premises, but their actions and choices must be weighed by the jury. *See* Anno., 49 A.L.R. 3d 387, Secs. 23 and 24. *Rappaport* also involves substantially similar circumstances and choices. We are persuaded that it was for the jury to decide in this case whether plaintiff, as an ordinarily prudent person, would be required to remain in his apartment rather than attempt to reach his car; or, whether plaintiff as an ordinarily prudent person, exercising reasonable care for his own safety, might attempt to leave his apartment on a reasonably necessary mission. We also find that it was for the jury to decide whether in the exercise of reasonable care for his own safety, plaintiff was required to use a different route from the one he took on the occasion in question.

Our decision makes it unnecessary for us to reach plaintiff's other assignments of error.

For the reasons we have stated, the judgment of the trial court must be and is

Reversed.

Judges MARTIN (Robert) and WEBB concur.