**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

J. THOMAS LUCK; ROSALIE LUCK,
<u>Plaintiffs-Appellants,</u>

v.

GSSW LIMITED PARTNERSHIP;
B.G.F.R.T.S., LC; SUMMIT
MANAGEMENT COMPANY; GSSW-REO
BRITTANY OAKS, LP, a limited
partnership; GSSW-REO OWNERSHIP
CORPORATION, a Texas corporation;
SUMMIT PROPERTIES, INCORPORATED,

d/b/a Summit Properties Real
Estate, Incorporated, a Maryland
corporation; GWEN MACY; DON
ALDER; EDDIE ALDER; CLINTON
BULLOCK; NANCY FREEMAN,
<u>Defendants-Appellees,</u>

and

SPENCER MITCHUM,
<u>Defendant.</u>

No. 97-1578

Appeal from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
N. Carlton Tilley, Jr., District Judge.
(CA-95-779-6)

Argued: October 2, 1997

Decided: December 8, 1997

Before MICHAEL, Circuit Judge, BUTZNER,
Senior Circuit Judge, and MAGILL, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion. Senior Judge Butzner wrote a dissenting opinion.

_____

## COUNSEL

**ARGUED:** Tyrus Vance Dahl, Jr., WOMBLE, CARLYLE, SAND-RIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina, for Appellants. Walter Kirk Burton, BURTON & SUE, L.L.P., Greensboro, North Carolina, for Appellees. **ON BRIEF:** Kimberly C. Stevens, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina, for Appellants. Gary K. Sue, James D. Secor, III, BURTON & SUE, L.L.P., Greensboro, North Carolina; Joseph T. Carruthers, BELL, DAVIS & PITT, Winston-Salem, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

The plaintiffs-appellants, Dr. Thomas Luck and his wife, brought this suit after he suffered extremely serious injuries from falling on an icy staircase in an apartment complex owned and managed by the defendants. The district court granted summary judgment for the defendants, concluding (1) that North Carolina law would define Dr. Luck as a licensee to the defendants and (2) that the Lucks did not forecast sufficient evidence to establish that Dr. Luck's injuries were the result of willful or wanton conduct by the defendants. We affirm.

I.

We consider the facts in this case in the light most favorable to the Lucks, who were the nonmovants. See Anderson v. Liberty Lobby,

2

Inc., 477 U.S. 242, 255 (1986). Dr. Luck, a physician from Virginia, attended a conference on March 3, 1995, in Winston-Salem, North Carolina. After the conference ended for the day, Dr. Luck spent the evening and night with his daughter, Laura, at the Hill Top Ridge apartment complex, also in Winston-Salem. The defendants all have some connection to the apartment complex. It is owned by GSSW Limited Partnership of Texas and managed by Summit Properties, Inc., a Maryland corporation. Nancy Freeman was the regional property manager for Summit Properties, and the other defendants were employees at Hill Top Ridge.

Sometime in the middle of the night of March 3-4, 1995, it began to snow. One of Laura Luck's roommates, Jessica Roberts, was moving out, and she was packing her car throughout the evening and early morning hours. She used an external staircase that was the only way to enter and exit the building containing Ms. Luck's apartment. At about three o'clock on Saturday morning, March 4, Ms. Roberts noticed that frozen precipitation had made the staircase slick, and soon she was forced to stop packing because ice had formed on the steps. She did not inform management about the slippery condition of the stairs.

Clinton Bullock was the on site grounds keeper for Hill Top Ridge. Bullock was required to monitor the weather during the week as well as on weekends, and he was responsible for putting Ice Melt on the staircases and other common areas exposed to the elements. Management had no written policy on ice removal, and it did not pay overtime for weekend work by its maintenance personnel. Furthermore, three tenants maintained that management did not respond promptly to complaints by tenants about ice and snow accumulation.

On the evening of March 3 Bullock observed some light snow. Concerned about the weather, he awoke earlier than usual (before six-thirty a.m.) the next morning to check conditions outside. From his apartment balcony Bullock saw only slush on his own steps, and he noticed that it had stopped snowing. He believed there would be no ice or snow to clear from the property, so he returned to his apartment.

At about seven o'clock that same morning, Dr. Luck left his daughter's apartment carrying a small bag in his left hand and another one

over his shoulder. He was wearing rubber-soled shoes. The lighting was dim and there was a light fog. When Dr. Luck reached the second step from the top of the exposed stairway, he hit ice and slipped. He grabbed at the slick, ice-coated handrails but to no avail. Dr. Luck fell down the staircase until he landed on the ground, suffering permanent injuries.

Dr. Luck sued the defendants in the Middle District of North Carolina, alleging that their negligence caused him to be permanently paralyzed, lose his medical practice, and suffer damages greatly in excess of $50,000. His wife, Rosalie Luck, joined in the complaint, alleging loss of consortium. After the defendants moved for summary judgment, the magistrate judge recommended that the motion be denied. The district judge rejected the magistrate judge's recommendation and granted summary judgment to the defendants. Dr. and Mrs. Luck appeal.

II.

This case is in federal court under diversity jurisdiction, as Dr. Luck is a citizen of Virginia and the defendants are citizens of Texas, Maryland, and North Carolina. See 28 U.S.C.§ 1332. In diversity cases it is the duty of a federal court to apply governing state law, as interpreted by the relevant state's highest court. If the law is not entirely clear, the federal court must rule as it appears the state court would rule. In trying to determine how the highest state court would decide, the federal court "should not create or expand that State's public policy." St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778, 783 (4th Cir. 1995).

A.

North Carolina law divides visitors to an owners' property into status categories for purposes of determining liability. Only two of these categories, invitee and licensee, are implicated here. According to the North Carolina Supreme Court, an invitee is one who, by express invitation, renders a service of direct and substantial benefit to his host. A customer in a store is a prime example of an invitee. See Mazzacco v. Purcell, 279 S.E.2d 583, 587 (N.C. 1981). A social guest, by contrast, is merely a licensee of the owner or possessor. See

4

Murrell v. Handley, 96 S.E.2d 717, 719-20 (N.C. 1957). There is no question that if Dr. Luck had been injured as a social guest in a private home, he would have been a licensee to the owner. See id. (holding that guest who slipped on wax floor in defendant's house was a licensee).

The North Carolina Supreme Court has never decided directly whether a social guest of a tenant, injured on the common grounds of the landlord's property, is categorized as an invitee or a licensee as to the landlord. On that subject the court has produced conflicting dicta in two cases separated by three decades. Nevertheless, we must look first at these two North Carolina Supreme Court cases to see if there is some indication of how that court would rule if presented with this case.*

In Jones v. Kinston Housing Authority, 138 S.E.2d 235 (N.C. 1964), the plaintiff was injured when she walked through a dark and unfamiliar portion of the defendant landlord's property as she went to visit her daughter, a tenant of the defendant. The North Carolina Supreme Court affirmed summary judgment for the landlord, noting that the plaintiff had used an unfamiliar path that was not the ordinary and customary place of entrance to the property."[I]f [plaintiff] adopts some other way he becomes a mere licensee, and cannot recover for defects outside and not substantially adjacent to the regular way." Id. at 237. By negative implication, this sentence seems to suggest that the plaintiff, a social guest of the tenant, would not have been a licensee had she used the ordinary and customary means of entrance to the property.

On the other hand, the two cases relied upon in Jones do not offer any support for the proposition that a tenant's social guest is the invitee of the landlord. Those cases concerned plaintiffs who easily fit the classic definition of an invitee: they were injured while engaged in some occupational or commercial endeavor on the defendant's property. See Wilson v. Dowtin, 2 S.E.2d 576 (N.C. 1939)

_____

*We would no doubt certify the state law question presented here to the North Carolina Supreme Court if there was a procedure available to do that. Because there is not, we must proceed by ourselves to ascertain and apply North Carolina law.

5

(plaintiff injured at defendant's store while attempting to resolve a commercial dispute between the defendant and another party); Cupita v. Carmel Country Club, Inc., 113 S.E.2d 712 (N.C. 1960) (plaintiff injured while performing in orchestra at defendant's club building). The Jones opinion therefore did not cite any authority or offer any reasoning to support the expansion of the classic definition of an invitee. We therefore believe that the Jones dictum is of little help to us.

Balanced against the older dictum in Jones is the more recent case of Cassell v. Collins, 472 S.E.2d 770 (N.C. 1996). There the plaintiff was stabbed while visiting a tenant in an apartment complex. The North Carolina Supreme Court noted that "[n]either party in the present case disputes the fact that as a social guest of a tenant of [the defendant,] plaintiff was a licensee." Id. at 772. However, the suit in Cassell was not against the landlord but against a company engaged to provide security for the apartment complex. As a result, the plaintiff's classification was not determinative, and the court's statement about the plaintiff's status was again dictum.

While these two cases leave ambiguity as to how the North Carolina Supreme Court would rule, the most recent statement in Cassell gives some indication that a social guest of a tenant would likely be considered a licensee of the landlord. On balance, we would give last year's dictum more weight than that of thirty years ago in trying to predict the likely ruling of the North Carolina Supreme Court.

B.

North Carolina also has an intermediate appellate court, the Court of Appeals. The rulings of a state's intermediate appellate court are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." See United States v. Little, 52 F.3d 495, 498 (4th Cir. 1995), quoting West v. American Telephone & Telegraph Company, 311 U.S. 223, 237 (1940). The North Carolina Court of Appeals has held that "any . . . duty owed by a landlord is determined by a visitor's status." Street v. Moffitt, 351 S.E.2d 821, 823 (N.C. Ct. App. 1987). And three cases from that court provide convincing support for

6

the proposition that a social guest of a tenant is categorized as a licensee with respect to the landlord.

The earliest of these cases is Andrews v. Taylor , 239 S.E.2d 630 (N.C. Ct. App. 1977). The plaintiff's intestate, the social guest of a tenant, had drowned after diving into a swimming pool located in the common area of the apartment building owned by the defendant landlord. The court analyzed the case in light of the status categories of invitee and licensee. In so doing, the court found that the decedent "enter[ed] upon the premises of another solely and exclusively in pursuit of his own pleasure," therefore making him a licensee. Id. at 632 (citations omitted).

Along the same lines, in Street the plaintiff, a social guest of a tenant, was injured by a power lawn mower operated by the tenant. When the plaintiff sued the landlord, the court concluded that the plaintiff was a social guest of the tenant and therefore a licensee to the landlord. See Street, 351 S.E.2d at 823. In addition, the court noted that the plaintiff's status as a licensee did not change merely because he had been injured while using the common area. See id.

Most recently, the Court of Appeals considered a suit by a social guest of a tenant against a security guard firm after the plaintiff was stabbed in a common area of an apartment complex. The court held that "[a]s a social guest at the apartment complex, the plaintiff held the status of licensee." Cassell v. Collins , 465 S.E.2d 782, 783 (N.C. App. 1995), rev'd on other grounds, 472 S.E.2d 770 (N.C. 1996). While the Court of Appeals was ultimately reversed on other grounds by the Supreme Court, the latter court (as noted in part II.A., above) indicated in dictum that a social guest of a tenant would be a licensee. See Cassell v. Collins, 472 S.E.2d at 772.

These North Carolina Court of Appeals cases are authority for the proposition that a social guest of a tenant is merely a licensee to the landlord. This authority, together with the recent dictum of the North Carolina Supreme Court, convinces us that under North Carolina law Dr. Luck was a licensee of the defendants.

C.

The magistrate judge pointed out that a number of other states have abandoned the traditional common law distinction between invitees

7

and licensees. As a result, he predicted that North Carolina would probably do the same if presented with the question in this case. It is true that over the past thirty years there has been movement in certain states away from the traditional grouping and towards a unitary standard of care to both business and social guests. Starting with Rowland v. Christian, 443 P.2d 1561 (Cal. 1968), several state supreme courts and legislatures have abolished the distinction between licensees and invitees. See Heins v. Webster County, 552 N.W.2d 51, 54 (Neb. 1996) (citing cases). On the other hand, a number of states have considered and expressly rejected efforts to eliminate common law status categories. See, e.g., Whaley v. Lawing , 352 So.2d 1090 (Ala. 1977); Huyck v. Hecla Mining Co., 612 P.2d 142 (Idaho 1980); Astleford v. Mildern Enters., Inc., 233 So.2d 524 (Miss. 1970); Carter v. Kinney, 896 S.W.2d 926 (Mo. 1995); Steen v. Grenz, 538 P.2d 16 (Mont. 1975); Moore v. Denune & Pipic, Inc., 269 N.E.2d 599 (Ohio 1971); Lohrenz v. Lane, 787 P.2d 1274 (Okla. 1990); Lower Neches Valley Authority v. Murphy, 536 S.W.2d 561 (Tex. 1976); Tjas v. Proctor, 591 P.2d 438 (Utah 1979); Younce v. Ferguson, 724 P.2d 991 (Wash. 1986).

The North Carolina Supreme Court, as one case last year demonstrates, continues to recognize the common law categories. See Newton v. New Hanover County Bd. of Educ., 467 S.E.2d 58, 62 (N.C. 1996) (explicitly retaining categories and reclassifying police officers and firefighters as invitees). It would be beyond our mandate to suggest that North Carolina would change its law to abolish the distinction between invitees and licensees when it recognized the distinction so recently. See St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778, 783 (4th Cir. 1995).

The Lucks also suggest that the North Carolina Residential Rental Agreement Act, which provides a statutory duty to "keep all common areas to the premises in safe condition," alters the state common law categories to create a duty of the landlord to social guests of tenants. N.C. Gen. Stat. § 42-42(a)(3). Such a reading misconstrues the language and purpose of the statute. In Lenz v. Ridgewood Associates, 284 S.E.2d 702, 705 (N.C. Ct. App. 1982), the North Carolina Court of Appeals explicitly held that the Act governs the legal relationship between landlord and tenant as contractual parties. For example, the Act makes the landlord's duties expressly conditional upon the les-

8

see's duty to pay rent. See § 42-41 ("Mutuality of Obligations"). Therefore, the court held that the residential rental agreement extends only to tenants. See Lenz, 284 S.E.2d at 705-06 (holding that Act abrogated common law solely as to tenants). Furthermore, the Act explicitly precludes use of its provisions to establish negligence per se. See § 42-44(d). The Residential Rental Agreement Act simply does not affect the duty of a landlord towards the guest of a tenant.

Based on the foregoing analysis, we conclude that under North Carolina law Dr. Luck, a social guest of his daughter, was a licensee with respect to her landlord.

D.

Because Dr. Luck was a licensee to the defendants, their standard of care under North Carolina is clear: only "willful or wanton conduct" on the part of a landlord will result in liability to a licensee. See Gray v. Small, 408 S.E.2d 538 (N.C. Ct. App. 1991), aff'd per curiam, 415 S.E.2d 362 (N.C. 1992). In the social guest-licensee context, North Carolina courts have found no actionable claim (1) when the defendant knew about, but did not replace or warn plaintiff about, a rotten rail on the stairway, see McCurry v. Wilson, 369 S.E.2d 389 (N.C. Ct. App. 1988); (2) when defendants negligently caused grass to accumulate on steps, upon which plaintiff later stumbled, see Gray, 408 S.E.2d at 538; and (3) when the defendant-landlord painted over a rotted porch railing, through which the plaintiff fell, see Clarke v. Kerchner, 181 S.E.2d 787 (N.C. Ct. App. 1971). Only when an affirmative action by the defendant-landlord causes the injury have the North Carolina courts been willing to find negligence. See, e.g., DeHaven v. Hoskins, 382 S.E.2d 856, 859 (N.C. Ct. App. 1989) (denying summary judgment to plaintiff scalded by defendant hurling a flaming pan of hot oil in her direction).

Given this very low duty of care owed to a social guest, we conclude that the defendants did not willfully or wantonly expose Dr. Luck to danger. Even assuming that the building owners and managers had no explicit policy concerning ice removal, the evidence forecast is not sufficient to show that their willful or wanton acts caused Dr. Luck's injuries. We recognize, of course, that Bullock's failure to check the exact staircase where Dr. Luck fell might be negligence.

9

However, because Bullock did show concern about the weather and checked conditions outside that morning, his actions fell far short of willful or wanton conduct.

We are bound by North Carolina state law to affirm the district court's grant of summary judgment to the defendants.

The judgment of the district court is

AFFIRMED.

BUTZNER, Senior Circuit Judge, dissenting:

I believe that the Supreme Court of North Carolina would hold that Dr. Luck was an invitee of the landlord for the following reasons:

In Jones v. Kinston Housing Auth., 262 N.C. 604, 138 S.E.2d 235 (1964), the Court noted that the landlord maintained adequate sidewalks for its tenants and their visitors. Nevertheless, a tenant's mother approached the apartment building from a neighboring property over an unlighted area of the landlord's property. The Court held that when a visitor does not use the ordinary way to the apartment she "becomes a mere licensee, and cannot recover for defects outside and not substantially adjacent to the regular way." (emphasis added; citations omitted).

In Jones it was necessary for the Court to consider the factual circumstances that caused a tenant's visitor to become a licensee with respect to the landlord. The key to the Court's reasoning is the verb "become," which connotes a transition from an invitee to a licensee when a visitor departs from the sidewalks the landlord provided tenants and their visitors.

Conversely, if North Carolina law classifies a tenant's visitor as a licensee, there would be no need in Jones for the Court to examine the factual background of the case. It would have sufficed to state that a tenant's visitor is a licensee of a landlord without reference to the visitor's unusual approach to the apartment.

10

I believe that the North Carolina Supreme Court would follow Restatement (Second) of Torts §§ 360 and 361. The Restatement, reflecting the view of well-reasoned cases, imposes on a landlord the duty of reasonable care that applies not only to a tenant but also to the tenant's visitors. Clearly the law explained in the Restatement would make Dr. Luck an invitee of the landlord.

As the magistrate judge noted, confusion has been engendered by the fact that the guest of a tenant is the licensee of the tenant. This sound principle of law does not make the guest of a tenant the licensee of a landlord. In an action holding the landlord liable for failure to exercise reasonable care, the landlord's obligation runs directly to the guest. It is not derived from the guest's relation to the tenant. Section 360 cmt. g of the Restatement illustrates this point. A clause in a lease may exonerate the landlord for harm done to a tenant. "Such a clause does not, however, affect the lessor's liability to third persons such as invitees or guests of the lessee, who are not parties to the contract nor in privity with it." § 360 cmt. g.

An instance of this confusion is Cassell v. Collins, 344 N.C. 160, 472 S.E.2d 770 (1996), on which GSSW heavily relies. In Cassell the landlord was not even a party to the suit. The injured plaintiff sued the company that provided guard service. The parties agreed that the plaintiff as a guest of his host was a licensee of his host. But the court did not address the guest's status with respect to the landlord.

Economic analysis of a lease explains the rationale for classifying guests of the tenant as invitees of the landlord:

> This obligation of the landlord extends also to all those who have lawful occasion to visit the tenants for social or business purposes; a right of ingress and egress for all such persons is essential, not merely to the enjoyment of the rented premises by the tenants, but also to the renting of them by the landlord; it is part of that for the use of which he is paid, and it exists for the mutual benefit of landlord and tenants alike.

Reardon v. Shimelman, 102 Conn. 383, 386, 128 A. 705, 706 (1925) (citations omitted).

11

Without belaboring the point by citing cases from numerous juris-
dictions, I respectfully dissent from the judgment that Dr. Luck was
a mere licensee.

12