An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-481

Filed 6 August 2025

Cabarrus County, No. 22-CVS-1248

MARK ARMISTEAD, as Administrator of the Estate of ROGER ARMISTEAD and DIANE WILLIAMS ARMISTEAD, Plaintiffs,

v.

VAN SHAW, individually, and in his official capacity as Sheriff of Cabarrus County, North Carolina, BRENT A. SAFFELL, individually and in his official capacity as a Deputy Sheriff of Cabarrus County, XYZ CORPORATION, a corporation, in its capacity as Surety on the official bond of the Sheriff of Cabarrus County, CABARRUS COUNTY, CABARRUS COUNTY FIRE SQUAD 410, TIMOTHY MILLS, individually and in his Official Capacity as Fire Captain of Fire Squad 410, BRANDON MUSIK, individually and in his official capacity as a Firefighter with Fire Squad 410, and John Does Nos. 1 - 10, Defendants.

Appeal by Plaintiffs from order entered 14 February 2024 by Judge W. A. Long in Cabarrus County Superior Court. Heard in the Court of Appeals 5 November 2024.

*Vann Law Firm, P.A., by Attorney Christopher M. Vann, for plaintiffs-appellants.*

*McAngus, Goudelock, & Courie, PLLC, by Attorney James D. McAlister, for defendants-appellees.*

STADING, Judge.

This case concerns an estate suing emergency responders and their supervisors following an attempt to save the decedent's life after he drove off a road and was

swept into flood waters. The trial court ordered summary judgment for the emergency responders and their supervisors. We affirm the trial court's order.

## I. Background

On 30 April 2020, around 3:00 p.m., Roger Armistead drove his car, a 1989 Mercedes-Benz S-Class sedan, on a bridge covered with water on Miami Church Road in Cabarrus County. According to Plaintiffs' complaint, filed by the administrator of Mr. Armistead's estate, "Miami Church Road is prone to flooding during heavy rain . . . ." The complaint also alleged "approximately 2.4 inches of rain had fallen by 4:03 a[.]m.," and:

> When Mr. Armistead got to Dutch Buffalo Creek bridge water was crossing over the road. There was a Jeep sitting stationary in the left lane. Mr. Armistead passed the Jeep in the right lane and his right rear tire went slightly off the pavement and the rear of the car slid around to the right and came to rest on a gentle sloping ground with rip rap and rock. The front of the car was pointed on a slightly upward angle with the front of the car facing against the flow of water.

Mr. McManus was the operator of the Jeep in the left lane. His Jeep was a lifted four-wheel drive 2001 Wrangler, equipped with thirty-five-inch off-road tires. In his deposition, Mr. McManus recalled he "crept" across the bridge and saw Mr. Armistead approaching in his rearview mirror. He moved to the left lane so Mr. Armistead could pass in the right lane. As Mr. Armistead passed Mr. McManus, Mr. Armistead's front tire went off the road and his car "spun out." Mr. McManus noticed the water was up to about "three quarter[s] of [Mr. Armistead's] tire" when his car

was in the road. After crossing the bridge in his Jeep, Mr. McManus made a U-turn to attempt to assist Mr. Armistead by using a winch mounted on his Jeep; unfortunately, the winch's cable was too short. While standing on the road, Mr. McManus noticed the water was up to "maybe a foot." As Mr. McManus contemplated moving his Jeep closer, multiple emergency responders arrived on the scene. Mr. McManus left the scene after he was told to move his jeep so the emergency responders could attempt to save Mr. Armistead.

Gerald Dworkin, a "professional Water Safety and Fire Rescue Consultant," tendered an affidavit "to render expert opinions." His opinion was based on a review of the relevant depositions, incident reports, and 911 call for service. Mr. Dworkin's affidavit acknowledges "Mr. McManus's winch cable did not reach the Mercedes[,]" and concludes the first responders "failed to call for a wrecker early in the incident to stabilize and pull the vehicle from the water."

Noted in an exhibit attached to the affidavit of Mr. Dworkin, the Georgeville Volunteer Fire Department's report reflects an arrival time of 3:19 p.m. Shortly thereafter, Cabarrus County Squad 410 arrived with Fire Captain Timothy Mills and Firefighter Brandon Musik. "Upon arrival, [the] Georgeville [Volunteer Fire Department] advised that there was a [ ]vehicle with one occupant trapped in floodwater." The water flowed eight to twelve feet per second and spanned about 200 feet across the road. The emergency responders concluded that accessing the vehicle on foot was unsafe and rescue by boat was the best method.

According to another exhibit attached to the affidavit of Mr. Dworkin, the West Stanly Fire Department arrived, with a boat, at 3:32 p.m. Assistant Chief Timothy Lankford requested Fire Captain Mills and Firefighter Musik to board a boat to assist with the rescue. As they prepared, Mr. Armistead's vehicle shifted and became three-quarters submerged. When the emergency responders approached the car by boat, they observed Mr. Armistead in the front seat with his seatbelt fastened; he appeared conscious but did not move. Firefighter Musik created a hole in the rear window with a spring-loaded window breaker. As the emergency responders worked to enlarge the hole, water filled the car, and it became fully submerged. Despite their efforts, the strong flow of the water thwarted further rescue attempts. Mr. Armistead's car was eventually located and pulled from the water, but tragically, he had drowned.

Mark Armistead, as administrator of the estate of Roger Armistead, and Diane Williams Armistead, ("Plaintiffs") filed suit against the emergency responders, their supervisors, and an unknown surety, including: Van Shaw, individually, and in his official capacity as the Sheriff of Cabarrus County; Brent A. Saffell, individually and in his official capacity as a deputy sheriff of Cabarrus County; the XYZ Corporation, in its capacity as surety on the official bond of the Sheriff of Cabarrus County; the West Stanly Fire Department, Inc.; the Georgeville Volunteer Fire Department; Cabarrus County; Cabarrus County Fire Squad 410; Timothy Mills, individually and in his official capacity as the Fire Captain of Fire Squad 410; Brandon Musik,

individually and in his official capacity as a firefighter with Fire Squad 410; and John Does nos. 1–10.

The lawsuit alleged claims for gross negligence, wrongful death, negligence, loss of consortium, and liability on official bond. Plaintiffs later voluntarily dismissed their claims against the West Stanly Fire Department and the Georgeville Volunteer Fire Department. The remaining parties (collectively, "Defendants") then moved for summary judgment. On 14 February 2024, the trial court granted Defendants' motion and dismissed Plaintiffs' claims with prejudice. Plaintiffs appeal from the trial court's order.

## II.    Jurisdiction

Plaintiffs appeal from the trial court's order for summary judgment, which is a final judgment. This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(l) (2023) ("From any final judgment of a superior court . . . .").

## III.    Analysis

The primary question on appeal is whether the trial court properly granted Defendants' motion for summary judgment. Plaintiffs argue there is a triable issue of fact regarding Defendants' negligence. Plaintiffs also contend that Defendants are not entitled to governmental immunity, public official immunity, or the safeguards of the public duty doctrine. After careful review, we affirm the trial court's order.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2023). "The standard of review for summary judgment is *de novo*." *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007). "Under a *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *Stevens v. Heller*, 268 N.C. App. 654, 658–59, 836 S.E.2d 675, 679 (2019) (citation and quotation marks omitted). The movant "bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002). This burden requires "(1) proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party (2) cannot produce evidence to support an essential element of his or her claim, or (3) cannot surmount an affirmative defense which would bar the claim." *Bernick v. Jurden*, 306 N.C. 435, 440–41, 293 S.E.2d 405, 409 (1982).

## A. Negligence

Plaintiffs' complaint asserts three claims based in tort against Defendants: (1) negligence; (2) wrongful death; and (3) gross negligence. The trial court's order, granting summary judgment against Plaintiffs, fails to indicate which, if any, of these claims it considered before concluding Defendants were shielded from liability under sovereign immunity, the public duty doctrine, and public official immunity. We decline to address whether Plaintiffs' claims are barred by these immunities as our

de novo review leads us to conclude Mr. Armistead was contributorily negligent and Plaintiffs are barred from recovery under this theory.

"To state a claim for common law negligence, a plaintiff must allege: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." *Blackmon v. Tri-Arc Food Sys.*, 246 N.C. App. 38, 42, 782 S.E.2d 741, 744 (2016) (citation omitted); *Patterson v. Worley*, 265 N.C. App. 626, 628–29, 828 S.E.2d 744, 747 (2019). "Initially, a plaintiff bears the burden of proving the essential elements of negligence[.]" *Patterson*, 265 N.C. App. at 628–29, 828 S.E.2d at 747. But "[e]ven if evidence of negligence is presented, [a] plaintiff cannot prevail if the evidence reveals plaintiff was contributorily negligent." *Id.* at 629, 828 S.E.2d at 747 (citation omitted).

"Contributory negligence is negligence on the part of the plaintiff which joins, simultaneously or successively, with the negligence of the defendant alleged in the complaint to produce the injury of which the plaintiff complains." *Proffitt v. Gosnell*, 257 N.C. App. 148, 152, 809 S.E.2d 200, 204 (2017) (citation omitted); *see also Jackson v. McBride*, 270 N.C. 367, 372, 154 S.E.2d 468, 471 (1967). "In order to prove contributory negligence on the part of a plaintiff, the defendant must demonstrate: '(1) a want of due care on the part of the plaintiff; and (2) a proximate connection between the plaintiff's negligence and the injury.'" *Daisy v. Yost*, 250 N.C. App. 530, 532, 794 S.E.2d 364, 366 (2016) (cleaned up). "The existence of contributory negligence does not depend on plaintiff's *subjective* appreciation of danger; rather,

contributory negligence consists of conduct which fails to conform to an *objective* standard of behavior—the care an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury." *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 670, 268 S.E.2d 504, 507 (1980) (cleaned up). "[C]ontributory negligence per se may arise where a plaintiff knowingly exposes himself to a known danger when he had a *reasonable* choice or option to avoid that danger, . . . or when a plaintiff heedlessly or carelessly exposes himself to a danger or risk of which he knew or should have known." *Lenz v. Ridgewood Assocs.*, 55 N.C. App. 115, 122–23, 284 S.E.2d 702, 707 (1981).

"Issues of contributory negligence, like those of ordinary negligence, are ordinarily questions for the jury and are rarely appropriate for summary judgment. Only where the evidence establishes the plaintiff's own negligence so clearly that no other reasonable conclusion may be reached is summary judgment to be granted." *Nicholson v. Am. Safety Util. Corp.*, 346 N.C. 767, 774, 488 S.E.2d 240, 244 (1997); *see also Frankenmuth Ins. v. City of Hickory*, 235 N.C. App. 31, 34, 760 S.E.2d 98, 101 (2014) (citation omitted) ("[S]ummary judgment is appropriate in a cause of action for negligence where 'the forecast of evidence fails to show negligence on defendant's part, or establishes plaintiff's contributory negligence as a matter of law.'"); *see also Erler v. Aon Risks Servs., Inc.*, 141 N.C. App. 312, 319, 540 S.E.2d 65, 70 (2000) (citations omitted) (A defendant is entitled to summary judgment "[o]nly if the evidence, considered in the light most favorable to the plaintiff, affirmatively shows

contributory negligence 'so clearly that no other conclusion can be reasonably drawn therefrom.'"); *see also Archie v. Durham Pub. Sch. Bd. of Educ.*, 283 N.C. App. 472, 475, 874 S.E.2d 616, 620 (2022) ("Contributory negligence is a bar to recovery if a plaintiff has contributed to their injury in any way.").

Here, the uncontroverted evidence shows at the time Mr. Armistead drove off the road, a considerable amount of water flowed over the road and bridge. *See Lenz*, 55 N.C. App. at 122, 284 S.E.2d 706–07 ("[T]he law imposes upon a person the duty to exercise *ordinary care* to protect himself from injury and to avoid a known danger; and that where there is such knowledge and there is an opportunity to avoid such a known danger, failure to take such opportunity is contributory negligence."). Plaintiffs' complaint acknowledges that on the day of the incident, 2.4 inches of rain had already fallen in the area by 4:03 a.m. When Mr. Armistead drove his car on Miami Church Road eleven hours later, Mr. McManus estimated the water level as "a foot," between his ankle and knee, and three-quarters of the height of Mr. Armistead's tire. Plaintiffs' complaint also concedes that Mr. Armistead drove off the road when passing the Jeep driven by Mr. McManus. And further, both Plaintiffs' complaint and expert, Gerald Dworkin, admit to known flooding concerns of Miami Church Road. *See Dobson v. Harris*, 352 N.C. 77, 83–84, 530 S.E.2d 829, 835 (2000) (citations omitted) (When deciding a motion for summary judgment, the trial court takes "all facts asserted by the adverse party . . . as true . . . and their inferences must be viewed in the light most favorable to that party."). Plaintiffs' complaint asserts:

"Miami Church Road is prone to flooding during heavy rain from the convergence of two Dutch Buffalo Creek tributaries in the vicinity. The Creek drains into corn fields abutting the road." Their complaint further states:

> When Mr. Armistead got to Dutch Buffalo Creek bridge water was crossing over the road. There was a Jeep sitting stationary in the left lane. Mr. Armistead passed the Jeep in the right lane and his right rear tire went slightly off the pavement and the rear of the car slid around to the right and came to rest on a gentle sloping ground with rip rap and rock. The front of the car was pointed on a slightly upward angle with the front of the car facing against the flow of the water.

In addition to the facts alleged in their complaint, Plaintiffs contracted with Mr. Dworkin, a "professional Water Safety and Fire Rescue Consultant," who prepared an "Incident Description." Contained within this Description are passages supporting the allegations referenced above. For example, the evidentiary record on appeal contains an excerpt from Mr. Dworkin's prepared report which states, "Miami Church Road was known to flood during heavy rain as a result of the convergence of two Dutch Buffalo Creek tributaries in the vicinity." Despite a considerable amount of water rushing over the bridge on Miami Church Road, Mr. Armistead drove on that bridge, past another vehicle traveling in the same direction, ran off the road, spun out, and landed in flood waters.

Mr. Armistead's actions amount to contributory negligence since he "expose[d] himself to a known danger when he had a reasonable choice" to avoid the flood waters. *See Lenz*, 55 N.C. App. at 122–23, 284 S.E.2d at 707. Considering the apparent

danger Mr. Armistead exposed himself to leading up to the attempted rescue, we hold Plaintiffs are barred from recovery under the theories of negligence, liability on official bond, loss of consortium, and wrongful death. *See id.*; *see also Bogle v. Duke Power Co.*, 27 N.C. App. 318, 321, 219 S.E.2d 308, 310 (1975) ("In an action for wrongful death predicated on negligence, summary judgment for defendant is correct where the evidence fails to establish negligence on the part of defendant, establishes contributory negligence on the part of the decedent, or determines that the alleged negligent conduct complained of was not the proximate cause of the injury."); *see also Smith v. Phillips*, 117 N.C. App. 378, 383, 451 S.E.2d 309, 313 (1994) ("Pursuant to N.C.G.S. § 58-76-5, a plaintiff may maintain a suit against a sheriff or other officer and the surety on their official bond for acts of negligence in the performance of their official duties."); *see also Nicholson v. Hugh Chatham Mem'l Hosp., Inc.*, 300 N.C. 295, 304, 266 S.E.2d 818, 823 (1980) ("[W]e hold that a spouse may maintain a cause of action for loss of consortium due to the negligent actions of third parties so long as that action for loss of consortium is joined with any suit the other spouse may have instituted to recover for his or her personal injuries.").

## B.  Gross Negligence

We note Plaintiffs failed to make arguments on appeal in support of gross negligence. *See Turner*, 197 N.C. App. at 566, 677 S.E.2d at 483.  Moreover, the trial court's order granting summary judgment makes no mention of findings pertaining to gross negligence.  Although Plaintiffs cites the standard for when a public official's

immunity may be pierced, "[i]ssues . . . in support of which no reason or argument is stated, will be taken as abandoned." N.C. R. App. P. 28(b)(6); *see also Sanchez v. Cobblestone Homeowners Ass'n of Clayton*, 249 N.C. App. 346, 357, 791 S.E.2d 238, 245–46 (2016) (cleaned up) ("It is not the duty of this Court to supplement an appellant's brief with legal authority or arguments not contained therein. These arguments are deemed abandoned by virtue of N.C. R. App. P. 28(b)(6)."). Accordingly, we dismiss Plaintiffs' argument on this issue.

### C. Plaintiffs' Other Arguments

Since Plaintiffs are barred from recovering under a theory of negligence and have abandoned their gross negligence and malicious acts arguments on appeal, we decline to address whether Defendants would have been privileged to the defenses of sovereign immunity, the public duty doctrine, or public official immunity. *See Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997) ("Under the doctrine of governmental immunity, a county is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity."); s*ee also McCullers v. Lewis*, 265 N.C. App. 216, 221, 828 S.E.2d 524, 531 (2019) (citations and quotation marks omitted) ("Public official immunity is a derivative form of governmental immunity that insulates a public official from personal liability for mere negligence in the performance of his duties unless his alleged actions were malicious or corrupt or fell outside and beyond the scope of his duties."); *see also Wood v. Guilford Cnty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 495 (2002) ("Under the public

duty doctrine, governmental entities have no duty to protect particular individuals from harm by third parties, thus no claim may be brought against them for negligence."). Plaintiffs' remaining arguments are overruled.

## IV. Conclusion

For the above reasons, we hold the doctrine of contributory negligence bars Plaintiffs' cause of actions against Defendants. Further, Plaintiffs abandoned any argument in support of gross negligence or malicious conduct. Moreover, consideration of their remaining arguments is unnecessary since Plaintiffs cannot establish the underlying torts. We therefore hold that the trial court did not err in granting summary judgment for Defendants.


AFFIRMED.

Judge GRIFFIN concurs.

Judge WOOD concurs in result only.

Report per Rule 30(e).